# United States Court of Appeals
## For the First Circuit

No. 02-1734

UNITED STATES OF AMERICA,

Appellee,

v.

NARCISO MONTERO-MONTERO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lipez, Circuit Judge,
Campbell, Senior Circuit Judge,
and Howard, Circuit Judge.

Anita Hill-Adames for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, Sonia I. Torres-Pabón, Chief,
Criminal Division, and Francisco Ojeda, Assistant United States
Attorney were on brief, for appellee.

June 2, 2004

**HOWARD**, **Circuit Judge**. In this appeal, Narciso Montero-Montero challenges the district court's two-level upward adjustment of his sentence on the ground that Montero employed "special skills" in piloting a boat while participating in a drug trafficking conspiracy. See U.S. Sentencing Guidelines Manual § 3B1.3. We vacate and remand for further inquiry by the district court.

In March 2002, Montero pled guilty to one count of conspiracy to possess cocaine with intent to distribute and admitted to forfeiture allegations in a second count. See 21 U.S.C. §§ 841, 853. As part of his plea agreement, Montero stipulated that he and several others had conspired to smuggle hundreds of kilograms of cocaine into Puerto Rico in January 1999. To prepare to make this shipment, Montero's co-conspirators procured a thirty-three-foot speed boat or "go-fast boat" and outfitted it with auxiliary fuel tanks. The co-conspirators brought the boat from St. Thomas to a designated meeting point at sea and picked up approximately 1,000 kilograms of cocaine. They then brought the shipment to a beach in Puerto Rico during the early morning hours of January 23, 1999, where they were met by Montero and others. Montero assisted in unloading the shipment for distribution in Puerto Rico.

After the shipment was unloaded, Montero and a co-conspirator boarded the empty boat with the intent to return it to

St. Thomas. While the boat was still in the coastal waters of Puerto Rico, a marine unit of the U.S. Customs Service stopped it. Although no contraband was found on board, the boat smelled as though it had been cleaned with chlorine and contained bottles of bleach. Montero and his co-conspirator also had bleach spots on their clothing. The boat was seized as a vessel used in drug smuggling, and Montero and eight others were later indicted by a federal grand jury.

Montero pled guilty pursuant to a plea agreement, accepting responsibility for possessing between 50 and 150 kilograms of cocaine. In the plea agreement, the parties agreed that Montero was eligible for both a two-level reduction in his base offense level because he was a minor participant in the offense, see U.S.S.G. § 3B1.2(b), and a three-level acceptance-of-responsibility reduction. See id. § 3E1.1. Montero acknowledged in the agreement, however, that any sentence to be imposed was within the sound discretion of the sentencing judge.

At sentencing, the district court made the two sentence adjustments contemplated in the plea agreement but also found, sua sponte (and without any request by the government), that Montero's sentence should be adjusted upward pursuant to § 3B1.3 of the U.S. Sentencing Guidelines on the basis of his use of "special skills":

> The defendant worked all his life as a fisherman. Therefore, he possessed special skills that facilitated the commission of the offense, and as such, in this particular case,

> he was not only offloading but also he was on the boat, the 33-foot fast boat, taking it back to St. Martin [sic] when he was intercepted by the marine units, and therefore . . . I find that he has special skills in navigating boats, and as such, a two-level increase is authorized pursuant to Guideline 3B1.3.

Defense counsel objected on the ground that there was no evidence that the defendant in fact had used motor vessels in his job as a fisherman. In response, the district court cited similarities between the underlying offense and a prior smuggling arrest in 1994 that was described in Montero's presentence report. The report stated that, in the earlier offense,

> [t]he defendant and co-conspirators pre-arranged coordinates off the coast of Puerto Rico, Saint Thomas and Saint Croix, U.S. Virgin Islands, Saint Marteen, Netherlands Antilles, and elsewhere to successfully transfer cocaine from either plane or vessel to private fishing boats, commonly referred to as yawls, destined for Puerto Rico.

The court commented that Montero may have "ha[d] the skills to pilot a boat back in 1994, and that is what he did here . . . ." Application of the three adjustments yielded an offense level of 33, and a guidelines sentencing range of 151 to 188 months.[1] The district court then sentenced Montero to 151 months' imprisonment and a seven-year supervised release term.[2]

---

[1] The district court found that Montero had a criminal history category of II.

[2] Without the special skills adjustment, Montero would have been subject to an offense level of 31 and a guidelines sentencing

-4-

We review de novo the district court's interpretation of the phrase "special skills." See United States v. Noah, 130 F.3d 490, 499 (1st Cir. 1997). The court's application of the sentencing guidelines to the facts is reviewed for clear error. See id.

In considering the defendant's challenge to the special skills adjustment, we first ask whether the district court supportably found that the defendant had a special skill within the meaning of the sentencing guidelines. See United States v. Connell, 960 F.2d 191, 198 (1st Cir. 1992). If so, we then ask whether the district court supportably found that the skill was used "in a manner that significantly facilitated the commission or concealment" of the underlying offense. See id.

Looking to the presentence report, the district court concluded that, as a lifelong fisherman and a participant in an earlier maritime smuggling conspiracy, Montero had developed an aptitude for navigating boats. The court concluded that this constituted a special skill as defined in the application notes of U.S. Sentencing Guidelines § 3B1.3, namely "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing." U.S.S.G. § 3B1.3, cmt. n.3 (providing examples of persons with special skills, such as "pilots, lawyers, doctors, accountants, chemists, and demolition

range of 121 to 151 months.

experts"). The district court found that Montero had used special skills in beginning to navigate the boat toward St. Thomas, a voyage that, had it been completed, would have required negotiating the keys between the two islands in the morning hours on a vessel with powerful engines.

Montero argues that this finding was clearly erroneous because he has only a fourth grade education and lacks any training or education. We have recognized that a defendant need not be formally educated or trained to possess a special skill. See Noah, 130 F.3d at 500 ("To the contrary, a special skill can be derived from experience or from self-tutelage."). Here, however, we are left to speculate from the record whether Montero had experience as a navigator of boats. The sole reference in the presentence report to Montero's background as a fisherman stated only that "[t]he defendant reported having worked all of his life as a fisherman and handyman. Reportedly, he has good skills in diving." Likewise, the presentence report notes Montero's background as a participant in an earlier drug smuggling operation but does not suggest that Montero ever navigated a boat in connection with these activities. Thus, the district court's suggestion that Montero may have had some role in navigating a boat in connection with the 1994 smuggling operation is not supported by the record before us.

Similarly, there is at least a question whether any special navigational skills Montero might have possessed were used

in a manner that significantly facilitated the commission or concealment of the offense. While disposing of a boat used in a shipment of contraband would undoubtedly aid the concealment of the offense, and while the navigation of a powerful boat between Puerto Rico and St. Thomas could supportably be found to require a special skill, see Calderon, 127 F.3d at 1339-40, the record now lacks evidence that Montero was in fact navigating the boat. As the government acknowledged at oral argument, the record reflects that Montero was a member of a two-man crew; it does not show whether Montero was piloting the boat or otherwise employing special skills in connection with its navigation. We therefore think that the most appropriate course of action is to vacate and remand either for any further record development about Montero's skill level and role in navigating the boat on the night of his arrest that the district court sees fit to pursue, see United States v. Medina, 167 F.3d 77, 80 (1st Cir. 1999) (vacating and remanding for more specific findings about defendant's managerial role); United States v. Rivera, 83 F.3d 542, 548 (1st Cir. 1996) (vacating and remanding for further record development with respect to a sentencing enhancement); see also United States v. DiPina, 178 F.3d 68, 77 (1st Cir. 1999) (vacating and remanding for determination whether defendant's prior juvenile offenses were properly considered part of criminal history), or, if no such evidence is available or forthcoming, for resentencing without application of

the special skills adjustment.[3]

We leave open the possibility of factfinding on remand, recognizing that the plea agreement may circumscribe the role of the government somewhat, because all parties appear to have been taken by surprise at the district court's decision to impose a special skills enhancement. As discussed above, this adjustment was neither contemplated by the plea agreement nor sought by the government; the district court raised the issue <u>sua</u> <u>sponte</u> at sentencing. This is thus not a case where the government asked for the enhancement but failed to adduce sufficient proof for its imposition - - a situation in which there would not likely be reason to permit a second bite at the apple. <u>Cf.</u> <u>United States</u> v. <u>Matthews</u>, 278 F.3d 880, 885-86 (9th Cir. 2002) (declining to prohibit introduction of new evidence on remand, but distinguishing cases in which "there was a failure of proof after a full inquiry into the factual question at issue"); <u>United States</u> v. <u>Parker</u>, 30 F.3d 542, 553-54 (4th Cir. 1994) (government not entitled to introduce additional evidence to support enhancement at resentencing, when a full and fair opportunity already given).

**Vacated and remanded**.

---

[3]In light of this disposition, we do not reach Montero's argument that the district court erred in enhancing his sentence <u>sua</u> <u>sponte</u> without notice of its intention to do so.