# United States Court of Appeals
## For the First Circuit

No. 13-1225

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS DÁVILA-FÉLIX, a/k/a Carlos Mona,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Gelpí,[*] District Judge.

Ignacio Fernández-de Lahongrais, by appointment of the court, for appellant.
Luke V. Cass, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Marcela Claudia Mateo, Assistant United States Attorney, were on brief, for appellee.

August 18, 2014

[*]  Of the District of Puerto Rico, sitting by designation.

**TORRUELLA, Circuit Judge.** This case marks the second time that Appellant Carlos Dávila-Félix ("Dávila") has appeared before this court to challenge his sentence. In March 2009, a jury convicted Dávila of robbing an FDIC-insured bank using force and intimidation, in violation of 18 U.S.C. §§ 2113(a), (d) ("Count One"), and of carrying and brandishing a firearm to commit that robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Two"). As to Count One, the district court imposed a mandatory life sentence pursuant to the federal "three strikes" statute, 18 U.S.C. § 3559(c)(1), and as to Count Two, it sentenced Dávila to the mandatory minimum of 84 months' imprisonment, to be served consecutively. In Dávila's first appeal, he argued that the district court erred in sentencing him under the "three strikes" statute. We agreed and remanded for resentencing.

At the resentencing hearing, the government presented additional evidence about Dávila's prior offenses. The district court found that the evidence established that Dávila was a career offender, and the court enhanced Dávila's Guidelines sentence accordingly. As a result, Dávila received a sentence of 300 months for Count One and 120 months for Count Two, for a total of 420 months' imprisonment. Dávila now appeals his second sentence, arguing that the district court erred by permitting the government to introduce additional evidence at resentencing to support the

-2-

career offender enhancement.  After careful consideration, we affirm.

## I.  Background

The details of Dávila's offense conduct and first sentencing were described thoroughly in United States v. Dávila-Félix, 667 F.3d 47 (1st Cir. 2011) ("Dávila I"), so we provide only a brief recitation of those facts here.

In 2003, beginning in May and ending in November, Dávila participated in a string of six bank robberies in Puerto Rico.  The Commonwealth arrested Dávila and charged him with armed robbery and related weapons offenses arising out of five of the six robberies. The fourth robbery that took place on September 8, 2003, however, was not included in the charges.  Dávila pled guilty and received a six-year sentence.

In April 2008, Dávila was again indicted, this time for violations of federal law stemming from the previously uncharged September 8, 2003, robbery.  Before trial began, the government filed an information pursuant to 21 U.S.C. § 851(a)(1), giving notice that it intended to seek a mandatory life sentence under the federal "three strikes" statute, 18 U.S.C. § 3559(c)(1).[1]  The

---

[1]  The federal "three strikes" statute provides that:

> [A] person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if -- (A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a

information listed four prior convictions that the government believed triggered the "three strikes" statute: (1) a May 23, 1993, conviction for second-degree murder; (2) a June 25, 1993, conviction for violations of Article 401 of the Controlled Substances Act of Puerto Rico; (3) a July 20, 2000, conviction for a violation of Article 404 of the Controlled Substances Act of Puerto Rico; and (4) the April 5, 2004, conviction for bank robbery and weapons violations.

After a four-day trial, the jury convicted Dávila on both the robbery and firearm counts, and he was sentenced on September 29, 2009. At that sentencing hearing, the district court found that Dávila had two prior violent felony convictions: (1) the second-degree murder conviction from May 26, 1993, and (2) the armed bank robbery conviction from April 5, 2004. The sentencing judge began by observing that these two convictions qualified Dávila as a career offender,[2] but ultimately concluded that the

_____

> State of -- (i) 2 or more serious violent felonies; or (ii) one or more serious violent felonies and one or more serious drug offenses; and (B) each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense.

18 U.S.C. § 3559(c).

[2] The Sentencing Guidelines provide that a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of

prior offenses triggered a mandatory life sentence under the "three strikes" statute. Accordingly, the district court sentenced Dávila to life imprisonment as to Count One, and to the mandatory minimum of 84 months for Count Two, to be served consecutively.

Dávila's first appeal followed. He argued that his sentence was imposed in error because his April 5, 2004, armed robbery conviction did not qualify as a predicate offense under either the "three strikes" or career offender provisions. In Dávila I, this court agreed, holding that the April 2004 conviction did not qualify as a prior conviction for "three strikes" or career offender purposes because the April 2004 conviction occurred after -- not prior to -- Dávila's commission of the September 8, 2003, offenses. 667 F.3d at 52, 55.

Additionally, we found that the record on appeal was inadequate to establish that Dávila's June 25, 1993, conviction qualified as a "controlled substance offense"[3] that could trigger

_____

    conviction; (2) the instant offense of conviction is a
    felony that is either a crime of violence or a controlled
    substance offense; and (3) the defendant has at least two
    prior felony convictions of either a crime of violence or
    a controlled substance offense.

U.S.S.G. § 4B1.1(a).

[3] As used here, a "controlled substance offense" is:

    [A]n offense under federal or state law, punishable by
    imprisonment for a term exceeding one year, that
    prohibits the manufacture, import, export, distribution,
    or dispensing of a controlled substance (or a counterfeit
    substance) or the possession of a controlled substance

-5-

the career offender sentencing enhancement.  <u>Id.</u> at 55-57.  As this court explained in <u>Dávila I</u>, the 1993 conviction stemmed from two violations of Article 401 of the Controlled Substances Act of Puerto Rico.  That statute criminalizes a range of offenses including concealment, distribution, dispersal, and possession with intent to distribute controlled substances.  <u>See</u> P.R. Laws Ann. tit. 24, § 2401.  The record on appeal, however, was insufficient to allow this court to determine whether Dávila's June 1993 conviction was for merely concealing a controlled substance, which would not qualify as a predicate "controlled substance offense," or whether the conviction was for possession with intent to distribute a controlled substance, which would qualify as a predicate offense. <u>Id.</u>  We thus reversed and remanded for resentencing.

At resentencing, the government provided the district court with additional documents -- including Dávila's change of plea motion -- to prove that the June 25, 1993, conviction qualified as a controlled substance offense that supported the application of the career offender enhancement.[4]  Dávila objected, arguing that this court's opinion in <u>Dávila I</u> foreclosed

---

        (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

[4]  In addition, the government offered for the first time the search and seizure order and certificate of forensic analysis related to the June 1993 conviction.

reconsideration of the 1993 conviction, and that the government should not be given an opportunity to present supplemental evidence to establish the career offender enhancement on remand.

After briefing by both parties, the district court ruled that the remand was not limited in scope and that the government could introduce the additional evidence. The court then determined that -- in light of the May 1993 second-degree murder conviction and the June 1993 conviction for drug offenses -- Dávila qualified as a career offender. This meant that Dávila's guidelines sentence for Count One increased from the original range of 84 to 105 months to an enhanced range of 360 months to life. The district court then imposed a 300-month sentence for Count One -- the statutory maximum -- to run consecutively with Dávila's 120-month sentence on Count Two.

## II. **Analysis**

This court reviews the correctness of a district court's legal analysis at sentencing de novo. Sampson v. United States, 724 F.3d 150, 161 (1st Cir. 2013); United States v. Wallace, 573 F.3d 82, 92 (1st Cir. 2009). We thus consider anew Dávila's assertions that the sentencing judge erred by permitting the government to introduce additional evidence related to his prior conviction, thereby violating the law of the case doctrine and exceeding the scope of remand. See United States v. Genao-Sánchez, 525 F.3d 67, 69 (1st Cir. 2008) (explaining that the interpretation

-7-

of this court's mandate "is a quintessentially legal question, so our review is plenary").

Before we address the merits of Dávila's claim, however, a bit of background on the governing legal framework is in order. The law of the case doctrine is a prudential principle rooted in important policy interests like "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993) (internal quotation marks and citation omitted). It provides generally that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Wallace, 573 F.3d at 87-88 (internal quotation marks and citations omitted).

The so-called "mandate rule" is a branch of the law of the case doctrine that "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004). Put another way, the mandate rule requires that the trial court conform with the directions of the appellate court on remand. Bell, 988 F.2d at 251. A district court seeking to determine the scope of remand must therefore consider carefully "both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the

circumstances it embraces."  Genao-Sánchez, 525 F.3d at 70 (quoting United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993)).

In keeping with this legal framework, we begin our review by considering carefully the letter and spirit of Dávila I.  As pertinent to this appeal, our opinion in Dávila I explained that the district court had interpreted the "three strikes" statute and the career offender enhancement erroneously, and that the record did not support the application of either.  677 F.3d at 52-55. Although we did not foreclose the possibility that Dávila's violations of Article 401 of the Controlled Substances Act of Puerto Rico could qualify as a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.1, we held that the government had not provided sufficient record evidence for this court to make such a determination one way or the other.  Id. ("On the record before us, the information presented regarding these drug convictions simply does not contain the requisite information that would permit a court to determine whether they indeed constitute 'controlled substance offenses' as defined by U.S.S.G. § 4B1.2(b).").  We ultimately concluded that the "record provides insufficient information to justify the imposition of the sentence" based on Dávila's drug offenses, and that "the sentence imposed by the district court is reversed and the case is remanded for resentencing."  Id. at 57-58.

Pointing to this language, the government argues that Dávila I includes no express limitation on the district court's ability to receive new arguments or evidence at resentencing. In the absence of any such prohibition, the government posits that the district court was free to consider additional evidence introduced for the first time at resentencing. See United States v. Bryant, 643 F.3d 28, 33 (1st Cir. 2011).

The government is correct that Dávila I imposed no express limitations on the scope of remand. However, the absence of an express limitation does not a limitless remand make. Unlike some of our sister circuits, the First Circuit does not generally allow de novo resentencing on remand. Compare United States v. McFalls, 675 F.3d 599, 605 (6th Cir. 2012) ("The presumption in favor of a general remand is necessarily strong in the context of a resentencing because the calculation of a sentence under the Guidelines requires a balancing of many related variables, and these variables do not always become fixed independently of one another." (internal quotation marks and citations omitted)), and United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir. 2002) ("On remand, the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo."), with United States v. Cruzado-Laureano, 527 F.3d 231, 234 (1st Cir. 2008) ("Although some circuits do generally

-10-

allow de novo resentencing on remand, the First Circuit does not."
(citations omitted)).

The rule of this circuit is that "upon a resentencing occasioned by a remand, unless the court of appeals [has expressly directed otherwise], the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision -- whether by the reasoning or the result." United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir. 1999) (alteration in original) (quoting United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997)). We therefore must determine whether the evidence regarding Dávila's June 1993 conviction was made newly relevant by either the reasoning or result of Dávila I.

Dávila contends that the career offender enhancement was not made newly relevant by Dávila I, which found the record evidence of his 1993 conviction insufficient to support the career offender enhancement under the long-since-established modified categorical approach.[5] 667 F.3d at 56. In Dávila's view, the government had access to the evidence of his 1993 conviction at the first sentencing as well as the opportunity to present it then.

_____

[5] The modified categorical approach set forth in Taylor v. United States, 495 U.S. 575, 599-602 (1990), establishes that a court seeking to determine whether a prior conviction qualifies as a predicate offense at sentencing must look first to the statutory definition of the offense. If the statute is divisible and encompasses both predicate and non-predicate offense conduct, the court should consult certain documents of record to determine whether predicate conduct formed the basis of the prior conviction. Id.; Descamps v. United States, 133 S. Ct. 2276, 2281 (2013).

Thus, the government's failure to provide adequate support for the career offender enhancement at the first sentencing did not make the topic newly relevant; it constituted waiver.  In addition, Dávila argues that we ought to follow our sister circuits in holding that the interests of fairness and judicial economy must prevent the government from getting a "second bite at the apple" after having failed to meet its burden to establish an enhancement at the first sentencing.  We take each argument in turn.[6]

Beginning with the question of whether the government's career offender argument was newly relevant or waived, we find this court's analysis in Ticchiarelli particularly instructive.  In Ticchiarelli, we held that our mandate did not preclude consideration of the defendant's new argument as to drug quantity at resentencing.  Ticchiarelli, 171 F.3d at 31-33.  We explained that where our mandate does not expressly preclude it, "the district court may consider . . . such new arguments or new facts as are made newly relevant by the court of appeals' decision." Id. at 32 (quoting Whren, 111 F.3d at 960).  This is true even in cases

---

[6]  Dávila also argues that the government's introduction of newly acquired evidence at resentencing ought to have been rejected for failure to comply with Federal Rule of Criminal Procedure 33(b)(1). However, Rule 33(b)(1) deals only with the ability of criminal defendants to seek new trials on the basis of "newly discovered evidence" found within three years of the date of their convictions. Fed. R. Crim. P. 33(b)(1).  As Dávila's resentencing involved neither "newly discovered evidence" nor a motion for a new trial, Rule 33(b)(1) is entirely inapplicable to this appeal. Accordingly, we will spill no more ink on the subject.

where the defendant had the opportunity to present his position at his first sentencing hearing "if he did not have a reason to raise it at his original sentencing." Id. (quoting Whren, 111 F.3d at 960). Put another way, "[w]hether there is a waiver depends not . . . on counting the number of missed opportunities . . . to raise an issue, but on whether the party had sufficient incentive to raise the issue in the prior proceedings." Id. at 32-33.

In Ticchiarelli's first sentencing hearing, he had no incentive to argue drug weight because it could not affect his sentence; the district court had already issued a ruling that would have made any such argument merely academic. Id. at 33. As a defendant is under no obligation to "raise every objection that might have been relevant" had the district court not already ruled to the contrary, we found that Ticchiarelli should be afforded the opportunity to present his newly relevant evidence of drug quantity at resentencing. Id. (citing United States v. Atehortva, 69 F.3d 679, 684-85 (2d Cir. 1995) (holding that the government could articulate new grounds for a departure at resentencing where the defendant's sentence had initially been automatically set at the statutory maximum for reasons that were no longer applicable after the appellate court's decision in an earlier appeal)).

In Dávila's case, the district court applied Ticchiarelli and found that the government had no incentive to delve into the June 1993 conviction at Dávila's first sentencing, and thus there

was no waiver. We agree. The consequence of the district court's erroneous application of the "three strikes" statute at the first sentencing hearing was a mandatory sentence of life imprisonment. That mandatory sentence made irrelevant any discussion of potential sentencing enhancements at the first sentencing. However, this court's decision reversing the mandatory life sentence made the subject of the Guidelines generally, and the career offender enhancement specifically, newly relevant at resentencing.[7]

In response, Dávila argues that the government's position is more closely analogous to that of the appellant in Bell than in Ticchiarelli. In Bell, this court affirmed the district court's decision to prevent the defendant from challenging -- for the first time at resentencing -- his status as an armed career criminal. 988 F.2d at 248-50. Similarly, Dávila reasons, the government here

---

[7] In this regard, Dávila's case is readily distinguishable from the portion of Ticchiarelli holding that the district court erred by considering at resentencing an unrelated Florida sentence. 171 F.3d at 35-36. In that instance, we explained that the Florida sentence did not constitute a "prior sentence" as defined by U.S.S.G. § 4A1.2(a)(1). Id. Additionally, we observed that unlike the drug quantity issue, the Florida sentence was not made newly relevant by virtue of our decision that the district court should have treated Ticchiarelli's drugs as marijuana rather than hashish oil for Guidelines purposes. See id. Certainly, the reversal of a discretionary sentence alone does not render newly relevant at resentencing alternative arguments that were relevant but not argued by the government at a defendant's initial sentencing. But that is not the case before us. Our decision in Dávila I reversed the imposition of a mandatory life sentence under § 3559, not a discretionary sentence, making newly relevant the previously unargued career offender enhancement that was irrelevant at the first sentencing.

-14-

should not have been able to argue that Dávila was a career offender for the first time at his second sentencing. He also points out that Ticchiarelli is not entirely on all-fours with the facts of his case, because Ticchiarelli recognized the ability of a defendant -- not the government -- to present new facts and argument at resentencing. Moreover, the sentencing judge in Ticchiarelli had already issued a final ruling against the defendant's position prior to the first sentencing, while there were no such final rulings against the application of the career offender enhancement in this case. See Ticchiarelli, 171 F.3d at 33.

Ultimately, we find none of these distinctions persuasive given the particular facts of this case. As an initial matter, Bell is readily distinguishable. In that case, the defendant argued successfully during his first appeal that the nature of his prior convictions called for sentencing under the Armed Career Criminal Act (the "ACCA") and not the career offender guideline. Bell, 988 F.2d at 249. At his resentencing, however, the defendant attempted to reverse his position, arguing for the first time that the ACCA should not apply. Id. at 249-50. The district court refused to allow the new argument, and on Bell's second appeal, we affirmed the district court's finding that the mandate rule prevented relitigation of the issue where no exceptional circumstances applied and the issue had been previously agreed upon

and decided in the case.  <u>Id.</u> at 252.  Here, in contrast, the government is not arguing in contravention of its previously asserted position.  Additionally, it has explained its failure to present the career offender evidence at the first sentencing, and it has provided credible evidence to support the enhancement.

As for Dávila's arguments that <u>Ticchiarelli</u> allows only a defendant to introduce new evidence and that it ought not apply to the government or in the absence of a final order of the district court, we cannot agree.  First, Dávila ignores the fact that <u>Ticchiarelli</u> cites with approval a Second Circuit case that held that the government could introduce a new argument at resentencing when it lacked incentive to introduce the argument at the initial sentencing.  171 F.3d at 33 (citing <u>Atehortva</u>, 69 F.3d at 684-85).  Second, given the mandatory nature of a life sentence under § 3559, the district court's ruling on the subject prior to hearing any Guidelines arguments served as the functional equivalent of the prior ruling in <u>Ticchiarelli</u>, as it rendered all other potential alternative arguments as to applicable Guidelines irrelevant.

In <u>United States</u> v. <u>Montero-Montero</u>, 370 F.3d 121, 124 (1st Cir. 2004), decided a full five years after <u>Ticchiarelli</u>, we held there was insufficient record support for the special skills adjustment imposed by the district court at the defendant's initial sentencing.  Nevertheless, we held that the district court could

allow the parties to develop the record further at resentencing to determine whether the adjustment was warranted. Id. As we explained, the case did not involve an enhancement that the government had sought at the initial sentencing hearing and simply failed to support adequately. Id. Rather, the district court had determined sua sponte that a special skills adjustment was warranted without any such request by either party. Id. In those circumstances, we held that our usual concerns about the government getting a second bite at the apple did not apply, and the district court could properly conduct additional factfinding regarding the enhancement at resentencing. Id.

Here, as in Montero-Montero, we find that this is "not a case where the government asked for the enhancement but failed to adduce sufficient proof for its imposition." Id. In fact, neither party so much as mentioned the existence of the career offender enhancement prior to the sentencing judge's sua sponte decision to announce the enhancement's applicability. The district court then went on to render the enhancement moot by sentencing Dávila in accordance with the "three strikes" statute. Applying the Ticchiarelli rule to the facts of this case, we find that the government did not waive its career offender argument by failing to advance it at the initial sentencing hearing when it lacked the incentive to do so. Our reversal of the district court's application of the "three strikes" statute invalidated a mandatory

-17-

sentence of life imprisonment, thereby making the career offender enhancement newly relevant at resentencing. In the absence of any express limitations on our mandate, the district court acted well within its discretion by permitting the parties to introduce new evidence on the subject of the enhancement at Dávila's resentencing.

As a final matter, we consider Dávila's argument that we ought to follow the lead of our sister circuits and find that the interests of fairness and judicial economy prevent the government from obtaining too many bites at the sentencing apple. Our failure to do so, he contends, will provide the government with a blank check to take as many passes at sentencing as necessary to produce the desired result.[8]

In support of this view, Dávila directs us to opinions from our sister circuits, pointing out instances in which an appellate court expressly limited the scope of remand on the basis of the government's failure to meet its burden at the initial sentencing. See, e.g., United States v. Gammage, 580 F.3d 777, 779

_____

[8] To the extent that Dávila seeks to invoke generally the constitutional prohibition against double jeopardy, we note that such principles are entirely inapplicable to the situation at hand, which involves resentencing a defendant to a lesser sentence after the defendant's successful appeal, and not repeated efforts to convict a defendant for a given offense. See United States v. Pimienta-Redondo, 874 F.2d 9, 16 (1st Cir. 1989) (en banc) ("[N]either appellate review of sentences nor increases after appeal will ordinarily implicate double jeopardy considerations." (citations omitted)).

-18-

(8th Cir. 2009) ("Because the government was clearly on notice that it was required to prove up [the defendant's] convictions before he would be subject to the enhancement at issue, we direct the district court on remand to resentence [the defendant] based on the record already before it."). He also directs our attention to discussions of the government's obligation to make its case the first time around. See, e.g., United States v. Dickler, 64 F.3d 818, 832 (3d Cir. 1995) ("[W]here the government has the burden of production and persuasion . . . its case should ordinarily have to stand or fall on the record it makes the first time around. It should not normally be afforded a second bite at the apple." (internal quotation marks and citation omitted)).

Without a doubt, Dávila is correct insofar as he argues that no party -- including the government -- is entitled to an unlimited number of opportunities to seek the sentence it desires. This basic proposition is already well-established in this circuit. See, e.g., Connell, 6 F.3d at 30 ("In the interests of both consistency and judicial economy, . . . litigants should not ordinarily be allowed to take serial bites at the appellate apple."). As we have previously recognized, in "a case where the government asked for [an] enhancement but failed to adduce sufficient proof for its imposition . . . there would not likely be reason to permit a second bite at the apple." Montero-Montero, 370 F.3d at 124.

Here, however, the government did not seek to introduce at resentencing additional evidence to bolster its failed "three strikes" statute argument, or to support a career offender argument it had presented unsuccessfully at the first sentencing, either of which would have constituted a second bite at the apple in violation of the mandate rule.  See Whren, 111 F.3d at 959 ("[U]pon remand the Government could not offer new evidence in support of the sentencing level for which it had unsuccessfully argued at the original sentencing hearing.").  Rather, it presented evidence to support an enhancement -- previously announced sua sponte by the district court and not in response to a request from the government -- that was made newly relevant by this court's reversal of a mandatory life sentence.  Cf. Atehortva, 69 F.3d at 684-85 (allowing consideration of new grounds for an enhancement at resentencing that were not previously addressed by the government due to the automatic application of the statutory maximum at the first sentencing); United States v. Johnson, 378 F.3d 230, 241 (2d Cir. 2004) ("[T]he issue of other enhancements was put aside, owing to the murder enhancement, and became newly relevant only upon remand.").  And although Dávila seeks to frame the issue as one unfairly permitting the government latitude denied to a defendant, in truth, our remand allowed the district court to consider new evidence or argument relating to the newly relevant career offender enhancement as produced by either party.

Neither does Dávila's appeal to judicial economy do him any favors. Our waiver doctrine ensures that a party <u>must</u> present all relevant arguments before the district court in the first instance to avoid waiver. Our decision today does nothing to undermine this generally applicable rule. The narrow <u>Ticchiarelli</u> exception applies only in instances where a previously irrelevant argument becomes newly relevant as a consequence of an appellate decision; it does nothing to help a litigant who fails to present relevant evidence or argument below. In this way, the <u>Ticchiarelli</u> exception acts itself as a safeguard of judicial economy. It guards against the creation of an "irrational" system in which litigants would be forced to litigate every conceivable sentencing issue at their hearing "even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant." <u>Ticchiarelli</u>, 171 F.3d at 32 (quoting <u>United States</u> v. <u>Jennings</u>, 83 F.3d 145, 151 (6th Cir. 1996)). We are thus confident that our decision today promotes rather than undermines judicial economy.

### III. <u>Conclusion</u>

In sum, the district court did not err by considering at resentencing the newly relevant evidence of Dávila's June 1993 conviction. Neither waiver nor the scope of remand precluded such consideration. As Dávila's challenge on appeal goes only to the propriety of the court's consideration of such evidence, and he

does not otherwise contest the application of the career offender enhancement at resentencing, we need go no further.[9] Accordingly, we affirm.

**AFFIRMED.**

---

[9] As a final matter, we note that Dávila flagged in his brief a potential instructional error as to Count Two. He argues that although he was indicted and sentenced for having brandished a firearm, the jury made no specific finding as to brandishing, which constitutes a violation of <u>Alleyne</u> v. <u>United States</u>, 133 S. Ct. 2151 (2013). Both in his brief and at argument, however, Dávila flatly conceded that he did not preserve his claim by objecting at trial or sentencing, and that his unpreserved <u>Alleyne</u> claim could not survive plain-error review. Our case law makes clear that we review such unpreserved <u>Alleyne</u> claims for plain error, <u>United States</u> v. <u>Delgado-Marrero</u>, 744 F.3d 167, 184 (1st Cir. 2014), so in light of Dávila's concession on that point, no further discussion of the matter is required.