[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12426
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cr-10013-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID MENEJIA MANSO,
a.k.a. David Menegia Manso,
a.k.a. David Meneiga Manzo,
a.k.a. David Menega Manso,
a.k.a. David Menejia-Manzo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 29, 2019)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

David Manso appeals his 57-month sentence for convictions stemming from

his involvement in smuggling noncitizens into the United States.  Manso argues the

district court erred in applying the special-skill enhancement. See United States Sentencing Guidelines § 3B1.3. After careful consideration, we deem this argument to be without merit, and we affirm.

## I.

A grand jury indicted Manso on twenty-two counts related to his alleged involvement in a conspiracy to bring noncitizens into the United States in violation of federal law. Manso pled guilty to three of these charges.

The Presentence Investigation Report ("PSR") set forth Manso's offense conduct. Relevant here, the PSR stated that an unknown person solicited a confidential source ("CS") to smuggle narcotics from the Bahamas to the United States using a go-fast vessel. The unknown person introduced the CS to Manso and told the CS that Manso would accompany him to the Bahamas to retrieve contraband and bring it back to the United States. After some discussion, the three decided the CS and Manso would drive a go-fast vessel from South Florida to Bimini, Bahamas, where they would pick up a group of noncitizens and smuggle them to South Florida on the go-fast vessel.

The CS and Manso left South Florida at nighttime in a go-fast vessel destined for Bimini. When they arrived, Manso docked the boat. Over the next few days, Manso and the CS negotiated with a Bahamian national about the terms of the smuggling plan. They ultimately agreed that Manso and the CS would

2

transport ten noncitizens at a rate of $4,000 per person.  After receiving payment, Manso, the CS, and the ten agreed-upon noncitizens boarded the go-fast vessel. They departed from Bimini late in the evening.  Manso and the CS took turns driving the vessel towards Key Largo.  Early the next morning, the United States Coast Guard interdicted the vessel five miles off the coast of Key Largo and found Manso, the CS, and ten noncitizens on board.

The PSR recommended that Manso's offense level be increased by two points because he "navigated the go-fast vessel to and from Bimini" and thus used a special skill in a manner that significantly aided the commission of his offenses. See USSG § 3B1.3.  Manso objected to this recommendation.  Manso argued that the evidence in the PSR did not support the enhancement, because "the application of this enhancement requires more than simply acting as captain of a small, recreational fishing vessel."  Manso did not object to the PSR's allegations that he: navigated the go-fast vessel to Bimini at night and docked it upon arrival; made the return trip with the CS in the late evening; navigated the go-fast vessel during the return trip; and took turns driving the vessel with the CS during the return trip.

At sentencing, Manso again objected to the application of the special skill enhancement.  He conceded that "navigating the boat requires a special skill."  But he argued that the enhancement requires "a little bit more than just a blanket assertion that they took turns driving the boat" and that the PSR "does not give the

3

Court sufficient facts to [find] that he . . . had that special skill other than just momentarily taking control at the helm." The district court disagreed with Manso's characterization of the PSR's allegations, finding the allegation that Manso and the CS took turns driving did not simply "mean [Manso] monetarily took [the helm]." The court overruled Manso's objection and ultimately sentenced him to concurrent terms of 57 months in prison on each of the three counts.

## II.

The special skill enhancement may apply if, in the commission of his offense, a defendant used "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." USSG § 3B1.3 & cmt. n.4; United States v. De La Cruz Suarez, 601 F.3d 1202, 1219 (11th Cir. 2010). This Court reviews de novo a district court's legal interpretation of the term "special skill," but reviews for clear error a district court's finding that a defendant possessed a special skill. Id. A factual finding is clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted). A sentencing court may base its factual findings on "undisputed statements in the presentence report." United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).

Manso argues the evidence was insufficient to support the special-skill enhancement. However, the undisputed facts show that Manso navigated a go-fast

4

vessel to Bimini at night, docked the vessel there, and navigated the vessel back to South Florida at night with ten additional people aboard. The skills required to perform these tasks "are not . . . possessed by the general public," even if he and the CS took turns driving. De La Cruz Suarez, 601 F.3d at 1219 (holding that "navigat[ing] a boat at night in the Florida Keys with no lights" is not a "skill[] possessed by the general public"); see also United States v. Calderon, 127 F.3d 1314, 1339 (11th Cir. 1997) ("[W]e are convinced that captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public, and, therefore, requires 'special skills' within the meaning of section 3B1.3."). The First Circuit cases Manso cites do not help his cause. See United States v. Hilario-Hilario, 529 F.3d 65, 78 (1st Cir. 2008) (holding that "steering a simple sailing vessel along a course, as directed by another, does not appear to be a special skill"); United States v. Montero-Montero, 370 F.3d 121, 124 (1st Cir. 2004) (remanding because "the record now lacks evidence that [the defendant] was in fact navigating the boat," but merely "reflects that [he] was a member of a two-man crew" and "does not show whether [he] was piloting the boat or otherwise employing special skills in connection with its navigation"). This record shows Manso did more to navigate the boat than the actions of the defendants described in the First Circuit cases. The district court did not clearly err in finding that Manso employed a special skill.

5

**AFFIRMED.**

6