# United States Court of Appeals
## For the First Circuit

No. 19-1086

UNITED STATES OF AMERICA,

Appellee,

v.

MARIANO MUÑIZ-LÓPEZ, a/k/a Mito,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Chief U.S. District Judge]

Before

Torruella, Selya, and Kayatta,
Circuit Judges.

Eric A. Vos, Federal Public Defender, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Section, and Kevin E. Lerman, Research & Writing Specialist, on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Antonio L. Pérez-Alonso, Assistant United States Attorney, on brief for appellee.

October 1, 2020

**KAYATTA**, <u>Circuit Judge</u>.  Mariano Muñiz-López appeals the condition of his supervised release that he not contact his preteen daughter for three years without approval from his probation officer.  He argues that the district court imposed the condition based in part on an untranslated Spanish document in violation of the Jones Act and that the condition is an unreasonable deprivation of his liberty.  Finding the Jones Act violation to be prejudicial, we reverse the condition and remand for resentencing.

## I.

In 2013, Muñiz-López was sentenced to a term of imprisonment, to be followed by eight years of supervised release, for federal drug offenses.  In 2015, he began his supervised release, with the standard conditions that he "not commit another federal, state, or local crime," that he report to his probation officer, that he follow the probation officer's instructions and answer any inquiries truthfully, and that he notify the probation officer of any change in residence or employment.

In early 2018, a magistrate judge found probable cause that Muñiz-López had violated his supervised release after he punched his then-girlfriend C.F. in the face.[1]  The district court imposed an additional period of supervised release and added

---

[1]  The magistrate judge clarified that he "did not make any finding that [Muñiz-López] punch[ed C.F.] in the face," only that there was probable cause for the violation.

conditions restricting Muñiz-López's contact with C.F. and mandating anger-management counseling.

In April 2018, while still on supervised release, Muñiz-López got into an argument with his then-eleven-year-old daughter. She had asked him for some money. He gave her some, and after she asked for more, he became upset and threw a half-empty beer can in her direction. The can hit her in the face, which caused bruising and swelling.

Shortly thereafter, the daughter's mother, S.R., reported the incident to Muñiz-López's probation officer, Ricardo Cruz-Sanabria. Cruz-Sanabria interviewed S.R. and the daughter about the incident. He visually observed the bruise on the daughter's face. He also took a photograph with his phone of another photo taken on the day of the incident that showed the daughter's face immediately after being hit; however, Cruz-Sanabria said that he lost the photo before any hearing on the matter.

Cruz-Sanabria recommended that S.R. file a formal complaint against Muñiz-López in Puerto Rico court regarding the beer-can incident. S.R. eventually filed a petition for protective order, written in Spanish. The Puerto Rico court scheduled a hearing on the matter, but S.R. attended to say that "she was no longer interested in going through" with the protective order. No criminal charges were brought against Muñiz-López.

Following the beer-can incident, the government moved the district court to revoke Muñiz-López's supervised release on the ground that he violated the condition that he not commit another crime. The government subsequently notified the court that Muñiz-López had violated additional conditions by, among other things, failing to report to his probation officer.

The preliminary revocation hearing was referred to a magistrate judge. The hearing focused mainly on the beer-can incident. At first, it was unclear what crime the government thought Muñiz-López had committed, but the government eventually argued that he had committed "abuse" of a minor child in violation of P.R. Laws Ann. tit. 8, § 1174. That statute punishes "[a]ny father, mother, or person responsible for the well-being of a minor or any other person who, through the intentional commission or omission of an act, causes harm to a minor, or endangers his/her health or physical, mental, or emotional integrity." P.R. Laws Ann. tit. 8, § 1174. In support of this accusation, the government relied on two sources of evidence: Cruz-Sanabria's testimony and S.R.'s petition for protective order.

Cruz-Sanabria reported what S.R. and her daughter told him during their interview and that he observed the bruise. Muñiz-López's counsel objected that the testimony was speculative and based on hearsay, but the magistrate judge overruled the objections. The government sought to have S.R. herself testify,

- 4 -

but she "d[id]n't want to go to a court again." So instead, the government introduced the untranslated Spanish petition for protective order. Muñiz-López's counsel objected that the document was not in English. The magistrate judge granted the government five days to file a translation, but the government never did so. Muñiz-López's counsel went on to argue that the document did not support a finding that Muñiz-López had committed a crime. Providing an on-the-fly translation, she argued the document said that Muñiz-López "threw a can and the can hit her," and not "he threw it at her," implying that he did not have the requisite intent to hit his daughter.

Following the hearing and some additional briefing (to which the government remarkably again appended the untranslated petition), the magistrate judge issued an order finding probable cause that Muñiz-López had committed the crime of abuse. As the government now concedes, "the magistrate[ judge]'s determination relied, in part, on [the] untranslated Spanish-language document."

The district court then held a final revocation hearing. At the outset, the court told the government that Cruz-Sanabria's testimony alone would not be enough to support a finding of criminal conduct. "[F]or purposes of probable cause the probation officer can testify," the court said, but S.R. and/or her daughter would need to testify in person for revocation "because this would involve probably an issue of credibility." The government

- 5 -

responded that it was no longer pursuing revocation on the ground that Muñiz-López had committed a crime, and was instead focusing on the other violations (e.g., failure to report to the probation officer), which Muñiz-López did not contest. When the court gave Muñiz-López an opportunity to speak for himself, he requested that the court assign him a different probation officer because Cruz-Sanabria never ensured that he was attending his required anger-management course. "God knows if I had gone to take that anger management course this situation through which I am going now may not have occurred," he said.

Based on the uncontested violations, the court revoked Muñiz-López's supervised release and sentenced him to 160 days' imprisonment, to be followed by three years of supervised release. The district court also criticized Muñiz-López for blaming his probation officer for his own shortcomings. The court then said, "to avoid any issues, given what Mr. Muñiz[-López] has stated, I will add some conditions of supervision." "[U]nless approved by the probation officer," the court ruled, "you shall not have contact with your daughter and your daughter's mother. If you want to have physical contact, any type of physical contact, you must inform the probation officer beforehand."

Muñiz-López's counsel asked the court to reconsider the no-contact condition as to his daughter, but the court was firm. "Based on what was probable cause before the magistrate judge I'm

- 6 -

going to enter that directive at this time," the court said. "If the local courts issue any directives, then you can ask me to revisit. And, again, it's a condition I can remove at any time but I'm doing this as a precaution for the time being and to allow him to avoid any other problems."

The district court's written judgment states that, "[u]nless approved by his U.S. Probation officer, [Muñiz-López] shall not have any contact with . . . [his] daughter." Muñiz-López timely appealed this condition on his supervised release.

## II.

The Jones Act states that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." 48 U.S.C. § 864. When the government violates that requirement in a criminal case, we look to see whether the defendant "suffer[ed] any prejudice." United States v. Carela, 805 F.3d 374, 381 (1st Cir. 2015). Such prejudice exists whenever the untranslated submission had "the potential to affect" the disposition by the district court of an issue raised on appeal. United States v. Rivera-Rosario, 300 F.3d 1, 10 (1st Cir. 2002).

The government concedes that it caused a violation of the Jones Act by submitting to the magistrate judge the protective-order petition written in Spanish and then failing to supply an English translation. It seems just as clear that the violation

had the potential to affect the disposition of the question whether Muñiz-López acted in a manner that warranted the no-contact condition. The untranslated petition for protective order was used in the proceeding before the magistrate judge, the magistrate judge relied in part on that evidence in finding probable cause, and the district court relied in substantial part on that finding in imposing the no-contact condition.

The government argues that the district court would have imposed the no-contact condition even without the magistrate judge's probable cause finding. It points out that the court initially imposed the condition in response to "what Mr. Muñiz ha[d] stated" at the hearing -- i.e., that he needed anger-management counseling and that his not attending that counseling had gotten him into "this situation."[2] But in response to Muñiz-López's request for reconsideration, the district court said it was imposing the condition "[b]ased on what was probable cause before the magistrate judge." And the magistrate judge had found probable cause that Muñiz-López had committed a crime -- including the requisite mens rea -- not just that he needed anger management. So, contrary to the government's assertion, the district court did

---

[2] The government also suggests that the no-contact condition may be based in part on Muñiz-López's history of abusing adult women -- specifically, the incident in which he allegedly punched C.F.

indeed rely on the magistrate judge's probable cause finding in imposing the no-contact condition.

The government also suggests that we might overlook this reliance because Muñiz-López, while objecting to the magistrate judge's reliance on the untranslated petition, did not object to the district court's reliance on the magistrate judge's tainted finding. However, we have previously held that "district court[s] ha[ve] an 'independent duty' to ensure the proceedings [a]re conducted in English, and so 'we relieve[] the parties of their usual duty to contemporaneously object.'" United States v. Román-Huertas, 848 F.3d 72, 76 (1st Cir. 2017) (quoting Rivera-Rosario, 300 F.3d at 6-7). More importantly, even were we to apply only clear error review, Muñiz-López would still prevail given that the government concedes plain error, the prejudice is also reasonably clear, and public policy -- as manifest in the Jones Act -- weighs against letting a finding based on an untranslated document stand. Cf. United States v. Rivera-Rodríguez, 761 F.3d 105, 112 & n.7 (1st Cir. 2014) (similarly noting, in the context of judicial interventions, that the necessary showing of "prejudice" is "comparable" to the third requirement of plain-error review, and that this sort of error "necessarily" satisfies the fourth requirement).

So we turn to the question of remedy. Normally we would ask whether the record minus the untranslated document would be

sufficient to sustain the no-contact condition. See Rivera-Rosario, 300 F.3d at 10. If so, we would vacate the order and remand for reconsideration on the existing record without the untranslated petition. See, e.g., id. at 11-13; see also Román-Huertas, 848 F.3d at 78 ("The untranslated document was not evidence, and so any certified translation would constitute new evidence. In general, 'the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision' on remand for resentencing." (quoting United States v. Dávila-Félix, 763 F.3d 105, 110 (1st Cir. 2014))). If not, we would simply reverse. See United States v. York, 357 F.3d 14, 20 (1st Cir. 2004) ("[T]he trial court's decision to impose the challenged condition [of supervised release] must have adequate evidentiary support in the record.").

Here, though, the district court -- not the magistrate judge -- imposed the challenged no-contact condition, while it was the magistrate judge -- not the district court -- that relied on the untranslated petition in the first instance. So perhaps we should direct our attention to the probable cause determination? But even if we found that the magistrate judge could have still found probable cause without the untranslated petition (which is likely the case, see, e.g., Spinelli v. United States, 393 U.S. 410, 412 (1969) ("[P]robable cause can be satisfied by hearsay information . . . ."), abrogated on other

- 10 -

grounds by <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213 (1983)), that would leave open the question whether the district court still would have found that probable cause determination based on Cruz-Sanabria's testimony enough to rely on. In sum, this may be an example of trying to put the toothpaste back in the tube.

Several factors suggest an alternative, more practical solution. First, the district court expressed the view that the government's case, relying on Cruz-Sanabria's testimony alone, was not enough to support a finding of criminal conduct. And without the untranslated petition, the government is left with only Cruz-Sanabria's testimony. Second, Muñiz-López has already spent approximately nineteen months restricted by the no-contact condition. And the district court, too, recognized that the three-year term might well be excessive, inviting Muñiz-López to return to the court to seek the removal of the condition. Third, the district court likely had the option of requiring additional participation in an approved program for domestic violence.

The nature of the condition at issue also suggests that the details of the beer-can incident were important. Ordering that a father cannot have any contact with his daughter for three years, save for permission from a probation officer, is a very significant condition that interferes with family relationships. <u>See generally</u> <u>United States</u> v. <u>Del Valle-Cruz</u>, 785 F.3d 48 (1st Cir. 2015). Its duration likely exceeds the restrictions that a

- 11 -

court more accustomed to dealing with the complexity of family disputes likely would issue. Certainly such a court would demand a substantial showing that such a condition was necessary and on balance beneficial to the child.

Given all of this, we are convinced that the district court would not have imposed the same condition if it had known that the probable cause finding rested in part on the untranslated petition. We therefore reverse the challenged special condition to the extent it would otherwise continue to apply after the date of this opinion, and remand for further proceedings consistent with this opinion. On remand, the district court shall not consider the petition, but may consider events that have occurred since the prior hearing to the extent made relevant by this remand. See Román-Huertas, 848 F.3d at 78. Because we are reversing the no-contact condition on Jones Act grounds, we need not address Muñiz-López's additional claim that the condition unreasonably deprives him of his liberty interests.

### III.

For the foregoing reasons, we reverse the condition on supervised release and remand for resentencing consistent with this opinion.