# United States Court of Appeals
## For the First Circuit

No. 14-1670

UNITED STATES OF AMERICA,

Appellee,

v.

ÁNGEL L. COTTO-NEGRÓN, a/k/a Quija,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

Tina Schneider on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, on brief for appellee.

January 9, 2017

**LIPEZ**, **Circuit Judge**.  Appellant Ángel Cotto-Negrón pled guilty to one count of committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and was sentenced to a prison term of 120 months.  On appeal, he challenges his sentence as both procedurally and substantively unreasonable.  We agree that the sentence was procedurally unreasonable because it was premised on factual findings that are not supported by any evidence in the record.  Accordingly, we vacate the sentence and remand the case for resentencing.

## I.

In setting forth the facts of this case, we draw upon the stipulated facts in the plea agreements of Cotto-Negrón and his co-defendants and their respective presentence investigation reports ("PSRs").

In December 2010, Cotto-Negrón and a number of co-defendants met several times to plan a robbery of a Kmart store located at San Patricio Plaza in Guaynabo, Puerto Rico.  On December 31, Cotto-Negrón, along with William Zambrana-Sierra, Analdi Tanco-Moreno, and one other co-defendant, drove with accomplice Edgar Velazquez-Fontanez to the Kmart, dropping Velazquez-Fontanez off to execute the robbery.  There is no evidence in the record indicating which of the co-defendants was the driver of the car.  Velazquez-Fontanez entered the store and hid in the sporting goods section until the store closed.  He

- 2 -

announced to two night crew employees that the store was being robbed and then struck one of the employees with the butt of a firearm, causing bleeding and a laceration to the victim's head. Velazquez-Fontanez next tied up the employees and began stealing merchandise. After more employees arrived at the Kmart in the morning, Velazquez-Fontanez forced the manager to open the store safe, and he took the money inside. He exited the store with the merchandise and cash, exceeding $50,000 in total value. At that point the same group of accomplices arrived back at the Kmart, picked up Velazquez-Fontanez, and drove off.

In September 2013, a grand jury issued a five-count indictment related to the robbery of two Kmart stores, including the Kmart at San Patricio Plaza. Cotto-Negrón, Zambrana-Sierra, and Tanco-Moreno were charged under count one, conspiracy to commit robbery, and count three, robbing the Kmart at San Patricio Plaza, both in violation of the Hobbs Act, 18 U.S.C. § 1951(a). They were not charged under any other counts in the indictment.

All three agreed to plead guilty to count three in exchange for dismissal of the conspiracy count. Each of their plea agreements incorporated identical stipulated facts regarding their illegal activity, and the PSRs of Cotto-Negrón and Zambrana-Sierra likewise contained an identical recitation of facts

- 3 -

describing the San Patricio robbery and their respective roles in the crime.[1]

As part of their respective plea agreements, Cotto-Negrón, Zambrana-Sierra, and Tanco-Moreno each agreed with the government to a recommended Sentencing Guidelines calculation at a total offense level of 26.[2]  Zambrana-Sierra and Tanco-Moreno were both sentenced in accordance with their agreements at the low end of the Guidelines range consistent with their respective criminal histories.

Cotto-Negrón was sentenced one day after Zambrana-Sierra.  As with the other two defendants, the court accepted the calculation recommended in his plea agreement -- but with one addition.  Citing a recommendation by the probation office in Cotto-Negrón's PSR, the court announced at the sentencing hearing that it was including a two-level Guidelines enhancement because

---

[1] Tanco-Moreno's PSR is not a part of the record in this case, but we have no reason to believe that the facts concerning the San Patricio robbery in Tanco-Moreno's PSR are any different from those described in Cotto-Negrón's or Zambrana-Sierra's PSRs.

[2] Each defendant agreed to the same recommended Guidelines calculation: A base offense level of twenty, see U.S.S.G. § 2B3.1(a); five additional levels for the brandishing or possession of a firearm, see U.S.S.G. § 2B3.1(b)(2)(C); two additional levels for the physical restraint of a victim, see U.S.S.G. § 2B3.1(b)(4)(B); two additional levels because the value of the loss was greater than $50,000, see U.S.S.G. § 2B3.1(b)(7)(C); and the subtraction of three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1.

a victim had sustained a bodily injury.[3]  The resulting total offense level for Cotto-Negrón was thus 28.

Cotto-Negrón's lawyer objected to the application of the bodily injury enhancement because the court had not imposed it on the two other co-defendants.  The following colloquy then ensued:

> COURT:  Don't talk about yesterday's sentence, because the individual in that case did not drive anybody to the Kmart, nor picked up any victims in the Kmart.  It's completely different. It's not the same.
>
> DEFENSE COUNSEL:  As I understand it, Your Honor, they're in the same situation.
>
> COURT:  No.  No.  They are not in the same situation.
>
> DEFENSE COUNSEL:  Your Honor, the statement of facts is the same.
>
> COURT:  No, they are not the same.  They are not the same by any means.
>
> * * *
>
> COURT:  Have you read the PS[R] from yesterday's defendant?
>
> DEFENSE COUNSEL:  No, Your Honor.
>
> COURT:  So how do you know it's the same?
>
> DEFENSE COUNSEL:  Because, Your Honor, the level of participation, during the process of gathering information from the case, they were

---

[3] Guidelines § 2B3.1(b)(3) provides: "If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury[.]" A bodily injury that does not amount to serious, permanent, or life-threatening bodily injury is assigned an increase of two levels.  Id. § 2B3.1(b)(3)(C).

in the same exact position as to level of participation.

COURT: They are not in the same level of participation.

* * *

DEFENSE COUNSEL: I'm just saying, Your Honor, here in the PSR, definitely going to the argument of what we understand is the disparity between one defendant and the other, it says that they dropped him off, and they will return to Kmart the next day. So if we have a defendant that did not receive the enhancement that Mr. Cotto is getting, and the participation is the same, there is an issue.

COURT: Your client took the robbers that were going to stay inside the store to the store, and picked them up the next day.

DEFENSE COUNSEL: I understand that.

COURT: The other gentleman did not do that.

DEFENSE COUNSEL: But, Your Honor, his name is right there in the facts.

COURT: He may be there, but that's not what happened.

DEFENSE COUNSEL: Well, the information that we have is they're in the same position, Your Honor.

COURT: That's not what happened.

DEFENSE COUNSEL: And that's our argument.

COURT: Completely different case. . . .

The court then sentenced Cotto-Negrón to a prison term of 120 months, near the high end of the Guidelines range for his applicable criminal history category and total offense level.[4]

Cotto-Negrón timely appealed, arguing that his sentence was procedurally unreasonable because the court relied on clearly erroneous facts, and substantively unreasonable because the court applied the two-level enhancement to him when it declined to apply it to his two identically culpable co-defendants.

## II.

When examining a district court's discretionary sentencing decisions, our review is "limited to determining whether they are 'reasonable.'" United States v. Ayala-Vazquez, 751 F.3d 1, 29 (1st Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 46 (2007)). This review is a bifurcated process in which we first determine whether the sentence imposed is procedurally reasonable before turning to its substantive reasonableness. Id.

When examining the procedural reasonableness of a sentence, "we review factual findings for clear error; arguments that the sentencing court erred in interpreting or applying the guidelines de novo; and judgment calls for abuse of discretion simpliciter." United States v. Leahy, 668 F.3d 18, 21 (1st Cir.

---

[4] Cotto-Negrón was in Criminal History Category III. Combined with a total offense level of 28, that category results in a sentencing range of 97-121 months of imprisonment.

2012) (citations omitted).  Significant procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range."  Ayala-Vazquez, 751 F.3d at 29 (alterations in original) (quoting Gall, 552 U.S. at 51).

### III.

Cotto-Negrón's procedural unreasonableness argument focuses on the district court's decision to impose a two-level enhancement to his offense level under U.S.S.G. § 2B3.1(b)(3)(A).  That guideline provides for a two-level increase "[i]f any victim sustained bodily injury" during the course of a robbery.  Cotto-Negrón does not contest that a victim of the crime suffered a bodily injury.  To the contrary, the injury is acknowledged both in his plea agreement and in his PSR.  Instead, he focuses on the facts cited by the district court to justify application of the enhancement in his sentencing but not in the sentencing of co-defendants Zambrana-Sierra and Tanco-Moreno.

Cotto-Negrón's attorney argued at the sentencing hearing that the enhancement should not be imposed on his client because the district court did not apply it the previous day when sentencing Zambrana-Sierra.  The district court admonished him,

stating that Zambrana-Sierra was less culpable because, unlike Cotto-Negrón, he "did not drive anybody to the Kmart, nor picked up any victims in the Kmart" and that "[i]t's completely different. It's not the same." When Cotto-Negrón's attorney attempted to point out to the district court that the co-defendants' plea agreements described identical factual circumstances, the court responded "No. No. They are not in the same situation." The judge asserted on the record no fewer than eight times that Cotto-Negrón's role in the crime was factually distinct from Zambrana-Sierra's.[5]

We find no basis in the record for the court's conclusion that Cotto-Negrón played a role in the Kmart robbery different from that of Zambrana-Sierra and Tanco-Moreno. All three plea agreements and at least two of the PSRs (i.e., Cotto-Negrón's and Zambrana-Sierra's), see supra note 1, reported the exact same facts about the robbery and depicted identical roles for each defendant. The district court cited no evidence in the record showing, for example, that Cotto-Negrón was the driver of the vehicle that

---

[5] The district court also implied that Cotto-Negrón's attorney was wrong to compare his client's criminal culpability to Zambrana-Sierra's culpability because Cotto-Negrón's attorney was not privy to Zambrana-Sierra's PSR and could not know if the factual circumstances were the same for both defendants. For purposes of this appeal, we granted Cotto-Negrón's attorney access to the relevant portions of Zambrana-Sierra's PSR and note that both defendants' PSRs indeed contain identical language regarding their respective roles in the San Patricio robbery.

dropped Velazquez-Fontanez at the Kmart.  We find no such evidence in the record, either.  The court thus clearly erred in ascribing a different level of culpability to Cotto-Negrón on the basis of his role in the offense.

Cotto-Negrón argues before us that because his sentence hinged upon clearly erroneous facts, it was procedurally unreasonable and cannot stand.  In response, the government insists that even if there are no factual differences between Cotto-Negrón's culpability and that of his two co-defendants, his claimed entitlement to resentencing is foreclosed by our decision in United States v. Kneeland, 148 F.3d 6 (1st Cir. 1998).  In Kneeland, the defendant challenged the application of a Guidelines enhancement for his role as an organizer in a mail fraud and money laundering scheme, arguing that he was no more culpable than a co-defendant who did not receive the role enhancement.  Id. at 16.  Although we noted circumstantial differences between Kneeland, who received the enhancement, and the co-defendant who did not, we also offered the following observation:  "Even if we were to assume that [the co-defendant's] role in the [crime] was commensurate with Kneeland's, this argument, without more, would not provide a basis for overturning the enhancement."  Id.  The government argues that because it is undisputed that the victim at the San Patricio Kmart sustained a bodily injury and that Cotto-Negrón's guideline sentencing range was calculated accurately, he is no different

from the defendant in Kneeland, and that case requires us to affirm his sentence.

The government, however, has misapplied the holding of Kneeland to the facts of this case. There, the defendant asserted that a role enhancement was inapplicable based on the facts of the crime. Here, the question is not whether the enhancement is factually supportable, but whether it was procedurally reasonable to apply the enhancement -- and hence impose a sentence -- based on the district court's clearly erroneous assumption that Cotto-Negrón was more culpable than his co-defendants. Well established precedent instructs that it was not. Even if the district court could have applied the enhancement to Cotto-Negrón despite its decision not to apply it to his co-defendants, a matter on which we take no view, it may not justify that difference based upon clearly erroneous facts. See Ayala-Vazquez, 751 F.3d at 29 (holding that "selecting a sentence based on clearly erroneous facts" constitutes a "significant procedural error" (quoting Gall, 552 U.S. at 51)); see also United States v. Rodriguez-Melendez, 828 F.3d 35, 40 (1st Cir. 2006) ("To protect the fairness and integrity of the sentencing process, the district court should impose a sentence . . . based on a correct view of the facts.").

In sum, the district court committed a clear error when it insisted without factual support that Cotto-Negrón was more culpable in the commission of the San Patricio Kmart robbery than

co-defendants Zambrana-Sierra and Tanco-Moreno.  Hence, we vacate Cotto-Negrón's procedurally unreasonable sentence and remand the case for resentencing.  We express no view as to the appropriate sentence or Guidelines calculation on remand.[6]

**So ordered**

---

[6] In light of this disposition, we do not address and intimate no view on appellant's argument concerning substantive unreasonableness.