# United States Court of Appeals
## For the First Circuit

No. 15-2302

UNITED STATES OF AMERICA,

Appellee,

v.

ISAR COLEMAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Sarah A. Churchill and Nichols & Churchill, P.A., on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

April 14, 2017

**TORRUELLA**, **Circuit Judge**.  Defendant-appellant Isar Coleman ("Coleman") pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 846.  He was sentenced to a forty-six-month term of imprisonment, at the lower end of his United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") imprisonment range.  Coleman now appeals, challenging the district court's application of a two-level enhancement for possession of a dangerous weapon under the U.S.S.G. § 2D1.1(b)(1), and the substantive reasonableness of his sentence.  After careful consideration, we affirm.

## I.  Facts

In 2014, the Maine Drug Enforcement Agency began investigating Coleman for illegal drug trafficking.  As part of the investigation, in October 2014, the agents intercepted various phone calls between Coleman and another related defendant, Christian Dent, in which Coleman ordered an "eight ball" (3.5 grams) of cocaine base from Dent for $250 and inquired about "blues" (Oxycodone).

On November 26, 2014, the agents seized .3 grams of cocaine base from a confidential source, who admitted to purchasing the illegal substance from Coleman.  Later, on December 8, 2014, the agents listened to recorded calls between Coleman and the

confidential source, in which they agreed to meet at Coleman's location for the confidential source to purchase $50 to $100 of cocaine base. Later that day, agents arrived at Coleman's location, seized drugs, drug paraphernalia, and drug-related money, and arrested Coleman, a resident, a female, and a juvenile. Coleman informed the agents that the juvenile was going to sell the drugs to the confidential source because Coleman was awaiting a re-supply of cocaine base.

After Coleman's arrest, he told the agents about a drug-trafficking scheme, and admitted, among other things, that a related defendant, Tasheem Carter ("Carter"), from whom he purchased three "eight balls" per month for $350 each "from April through November," "traded guns for drugs." Coleman also admitted that, while he was in an apartment with Carter, "Carter traded drugs for a black handgun and that the transaction appeared to be 'second nature' for Carter." Coleman further admitted that on one occasion Carter had been in a "feud" with a related defendant, Sabree Branch, and "Carter bragged about shooting at Branch." Finally, Coleman admitted that on one occasion, he was in an apartment with Carter waiting for Branch to deliver what he "assumed was a gun," but Branch was arrested right in front of the apartment.[1] This was the same apartment where Coleman was arrested

---

[1] According to wiretapped calls, Carter was planning on purchasing

and where the confidential source had bought cocaine base from Coleman.

On January 15, 2015, a grand jury returned an indictment charging Coleman with conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C), 846. On June 15, 2015, Coleman pleaded guilty, pursuant to a written plea agreement.[2]

At sentencing, the district court calculated a total offense level of twenty-three, which resulted from a base offense level of twenty-six pursuant to U.S.S.G. § 2D1.1; a two-level enhancement for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1); a two-level reduction pursuant to U.S.S.G. § 5C1.2 for meeting the requirements of the safety valve provision; and a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) due to Coleman's timely acceptance of responsibility. The total offense level of twenty-three, combined with a criminal history category I, yielded a guideline sentencing range ("GSR") of 46-57 months of imprisonment. The district court then proceeded to consider the relevant statutory factors under 18 U.S.C.

_____

a firearm from Branch on November 28, 2014.

[2] The plea agreement contained a waiver-of-appeal provision should Coleman's incarcerative sentence not exceed thirty months, but the provision is inapplicable here given the district court's imposition of a forty-six month sentence.

§ 3553(a).  Specifically, the district court stated that it had "listened carefully" to defense counsel's statements and Coleman's "sincere" allocution, and had read the revised Presentence Report and Coleman's sentencing memorandum, "as well as all the other written materials."  The sentencing court also took notice of Coleman's "very difficult childhood."  However, the sentencing court stated that these factors needed to be balanced with others, such as the seriousness of the offense, the significant quantity of drugs involved, the severe effects to other people, and the presence of a juvenile when Coleman was arrested.  The district court ultimately sentenced Coleman to forty-six months of imprisonment to be followed by three years of supervised release.

On appeal, Coleman challenges both the procedural and substantive reasonableness of his sentence.  He submits that the district court procedurally erred in calculating his GSR by applying a two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), and that the district court abused its discretion by imposing a sentence at the lower end of his GSR -- rather than below it -- because it should have weighed some factors differently in crafting his sentence.

## II. Discussion

We review "the reasonableness of a sentence 'under a [bifurcated] deferential abuse-of-discretion standard,'" United States v. Battle, 637 F.3d 44, 50 (1st Cir. 2011) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)), by which "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). A sentence is procedurally reasonable if the district court committed no procedural sentencing errors, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Trinidad-Acosta, 773 F.3d 298, 309 (1st Cir. 2014). This assessment of the procedural reasonableness of a sentence, in turn, is done by applying a multifaceted analysis, by which "[w]e review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls

-6-

for abuse of discretion simpliciter." Id. (quoting United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)).

Once we determine that the district court committed no significant procedural errors, we proceed to "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. At this point, "[t]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. (quoting United States v. Ramos, 763 F.3d 45, 58 (1st Cir. 2014)).

## A. The Procedural Reasonableness of Coleman's Sentence

Coleman first submits that the district court erred in applying the two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). Coleman argues that he pleaded guilty to a conspiracy that lasted only one day, December 8, 2014, and since no evidence linked firearms to that specific day, an enhancement under § 2D1.1(b)(1) was improper. Since Coleman preserved this first submission, we review the district court's interpretation or application of the guidelines de novo, and its factual findings for clear error. United States v. Cotto-Negrón, 845 F.3d 434, 437 (1st Cir. 2017).

A two-level increase in the offense level applies "[i]f a dangerous weapon (including a firearm) was possessed," U.S.S.G. § 2D1.1(b)(1), "unless it is clearly improbable that the weapon

-7-

was connected with the offense," id. at § 2D1.1 cmt. n.11(A). To determine the applicability of this enhancement, the district court may consider all relevant conduct. Id. at § 1B1.3(a)(1)(A)-(B). Since the court may consider all relevant conduct, it follows that the court's assessment is not "limited to the charged conspiracy." See, e.g., United States v. Shippley, 690 F.3d 1192, 1200 (10th Cir. 2012) (noting that "a § 2D1.1(b)(1) enhancement applies if a dangerous weapon was present or possessed during uncharged drug trafficking activity that constitutes relevant conduct under § 1B1.3" (citing United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993))); see also United States v. Mitchell, 528 F. App'x 800, 806 (10th Cir. 2013) (holding that the § 2D1.1(b)(1) enhancement is not "limited to the charged conspiracy") (emphasis in original). Further, we have held that "[f]or this enhancement to attach, a defendant need not be caught red-handed: the enhancement applies not only where a defendant himself possessed a firearm but also where it was reasonably foreseeable to the defendant that firearms would be possessed by others during the conspiracy." United States v. Burgos-Figueroa, 778 F.3d 319, 321 (1st Cir. 2015). The Government bears the initial burden of establishing the nexus between the firearm and the offense conduct. United States v. Corcimiglia, 967 F.2d 724, 728 (1st Cir. 1992). Once this nexus has been established, "[t]he

burden then falls on [the] defendant to come forward with evidence demonstrating the existence of special circumstances that would render it 'clearly improbable' that the weapon's presence has a connection to the [offense]." Id.

Here, even though no evidence linked firearms to December 8, 2014, it was reasonably foreseeable to Coleman, and in fact he knew, that firearms were present or possessed by others during drug trafficking activity that constitutes relevant conduct. The record reveals that Coleman admitted that, during the time that he was held accountable for the drug-trafficking conspiracy, one of his co-conspirators and drug suppliers, Carter, traded guns for drugs. Coleman also admitted that he was in an apartment with Carter when a related defendant, Branch, was scheduled to deliver what he "assumed was a gun." Thus, Coleman's own admissions established his knowledge that others possessed firearms during the conspiracy. Under these circumstances, the district court did not clearly err in finding that Coleman "both knew of and could reasonably foresee his co-conspirators' possession of firearms." United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004). The government having established the nexus between the firearm and the relevant offense conduct, Coleman failed to prove that the connection between the weapon's presence and the offense was clearly improbable.

We thus conclude that the district court did not clearly err in applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(1), and that its sentence is procedurally reasonable.

**B. The Substantive Reasonableness of Coleman's Sentence**

Because we find no procedural error, we turn to consider whether Coleman's sentence was substantively reasonable. See United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015). After reviewing the record, and considering the totality of the circumstances, we conclude that his sentence is substantively reasonable.

Coleman submits that his sentence was substantively unreasonable because "[t]here are other factors that a sentencing court can consider in determining whether a variance from the Guideline range is appropriate," such as "cooperation," difficult upbringing, and "[t]he disparity between the treatment of cocaine base and cocaine powder." The Government contends that Coleman failed to preserve this claim below, and that we must therefore review it under the plain error standard. But, because we conclude that Coleman's challenge fails even under the more favorable abuse-of-discretion standard, Gall, 552 U.S. at 46, we need not decide whether Coleman forfeited this claim below. See United States v. Arsenault, 833 F.3d 24, 29 (1st Cir. 2016) (noting that the law in our circuit is unsettled as to whether we review a substantive

reasonableness challenge for abuse of discretion or for plain error where the defendant fails to object below).

Once the GSR has been properly calculated, "sentencing becomes a judgment call," United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008), and it may be constructed "based on a complex of factors whose interplay and precise weight cannot even be precisely described." Id. (quoting United States v. Vega-Santiago, 519 F.3d 1, 4 (1st Cir. 2008) (en banc)). Indeed, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592 (citing Martin, 520 F.3d at 92). Where, as here, a defendant is sentenced within the applicable GSR, he carries "a heavy burden." Trinidad-Acosta, 773 F.3d at 310 (quoting United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006)). Coleman, however, has not carried his burden.

He concedes that the sentencing court received evidence of his "upbringing and the domestic violence he was a victim of when he was a child," and "heard argument about the disparity in the Guideline calculations that still exist for cocaine base." Nothing on the record suggests that the sentencing court did not consider these factors pressed by Coleman. Indeed, the record reflects that the sentencing court did take into account Coleman's history and characteristics, including his "very difficult

childhood," and the defense counsel's "arguments about powder versus crack." Also, the court noted that it could "consider cooperation even if it [did] not result in a 5K1 motion from the Government." Furthermore, the record reveals that the sentencing court also considered all of the other § 3553(a) sentencing factors. Where, as here, the district court states that it has considered all of the § 3553(a) factors, "[s]uch a statement 'is entitled to some weight.'" Clogston, 662 F.3d at 592 (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010)). We discern no abuse of discretion in the sentencing court's weighing of the § 3553(a) factors.

## III. Conclusion

The district court did not clearly err by applying the two-level enhancement for the possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), and thus Coleman's GSR was properly calculated. After correctly calculating the total offense level and GSR, it imposed a within-the-Guidelines sentence. Because Coleman's sentence is both procedurally and substantively reasonable, we affirm.

**Affirmed.**