# United States Court of Appeals
## For the First Circuit

No. 20-1245

UNITED STATES OF AMERICA,

Appellee,

v.

JOSUÉ XAVIER CHEVERES-MORALES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Selya, and Thompson,
Circuit Judges.

John E. Mudd, with whom Law Offices of John E. Mudd was on brief, for appellant.
David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, were on brief, for appellee.

September 29, 2023

**SELYA**, **Circuit Judge**.  In this appeal, we train the lens of our inquiry on a claim of error not timely raised by defendant-appellant Josué Xavier Cheveres-Morales.  Because this unpreserved claim involves a violation of the mandate rule and because the equities encourage a departure from the party presentation principle, we hold that we may consider the claim sua sponte.  Undertaking that consideration, we conclude that the district court's use, at resentencing, of convictions and sentences occurring after the defendant's original sentencing to increase his guideline sentencing range was contrary to our holding in United States v. Ticchiarelli, 171 F.3d 24, 35 (1st Cir. 1999).  Finding this error to be plain, we vacate the defendant's new sentence and remand for resentencing consistent with this opinion.

**I**

We briefly rehearse the background and travel of the case.  Inasmuch as this appeal follows a guilty plea, we would typically "glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).  Here, however, we add facts gleaned from the record of the defendant's first appeal (which was cut short following the government's motion to remand).

In February of 2017, a federal grand jury sitting in the District of Puerto Rico returned a superseding indictment, which — as relevant here — charged the defendant with one count of attempted carjacking, see 18 U.S.C. § 2119(1); one count of carjacking, see id.; and two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, see 18 U.S.C. § 924(c)(1)(A)(ii). Although the defendant initially maintained his innocence, he later pleaded guilty to three of the charged counts.[1]

After accepting the defendant's guilty plea, the district court ordered the preparation of a PSI Report. Of particular pertinence for present purposes, the probation office listed two arrests within the portion of the PSI Report chronicling the defendant's criminal history. The first was a 2011 arrest for, inter alia, possession of a firearm without a license. The defendant was a juvenile at the time, and he completed a diversion program. The second was a 2017 arrest for, inter alia, aggravated robbery and possession of a firearm without a license. This arrest resulted in six charges — all of which were subsequently dismissed (without a merits adjudication) pursuant to Puerto Rico Rule of Criminal Procedure 64. Neither the 2011 arrest nor the 2017 arrest resulted in any criminal history points, leaving the defendant

---

[1] Consistent with the plea agreement, the remaining count was later dismissed by the district court.

with a clean slate and a placement in criminal history category (CHC) I.

The PSI Report grouped the two carjacking counts. See USSG §3D1.1. Based on a total offense level of twenty-six and a CHC of I, the guideline sentencing range for those two counts of conviction was sixty-three to seventy-eight months' imprisonment. The guideline sentencing range for the firearm count was eighty-four months' imprisonment. See 18 U.S.C. § 924(c)(1)(A)(ii); USSG §2K2.4(b). The statute of conviction, though, called for that sentence to run consecutive to any sentence imposed on the carjacking counts. See 18 U.S.C. § 924(c)(1)(D)(ii).

The district court convened the disposition hearing on July 27, 2018. The defendant sought sentences at "the lower end of the guidelines." The government — in line with its commitment under the plea agreement — entreated the district court to impose concurrent sentences of sixty-three months on the two carjacking counts and a consecutive sentence of eighty-four months on the firearm count.

After the defendant allocuted, the district court noted the defendant's criminal history, describing the two arrests mentioned above and a case purportedly pending in a Puerto Rico court involving two aggravated robberies and two firearm

violations.[2]  The court declared that the defendant "ha[d] shown a pattern of committing the same type of violent crime for which he has been arrested several times."  Because "[i]t [was] evident that [the defendant] ha[d] a complete disregard for the law," the court varied upward and imposed concurrent sentences of eighty-seven months on the two carjacking counts and a consecutive sentence of 108 months on the firearm count.

The defendant appealed his sentence.  Following submission of the defendant's opening brief in this court, the government filed an unopposed motion to remand the case to the district court for resentencing.  Citing our decision in United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019),[3] the government conceded that the sentencing court had erred when it "considered the mere fact that [the defendant] had prior arrests in order to impose an upward[ly] variant sentence."  At the same time, the government conceded that the sentencing court had erred when it "considered alleged pending state charges which were never included in the [PSI Report] . . . or any motions." Taking account of these confessed errors, we granted the motion to remand in an

---

[2] That case was not mentioned in the PSI Report and its dimensions are unclear.

[3] In Marrero-Pérez, we held that a sentencing court should give "no weight . . . to arrests not buttressed by convictions or independent proof of conduct."  914 F.3d at 22; see United States v. Vélez-Andino, 12 F.4th 105, 113 n.1 (1st Cir. 2021); United States v. Díaz-Lugo, 963 F.3d 145, 153 (1st Cir. 2020).

unpublished judgment.  We henceforth refer to that judgment as "Cheveres I."

Prior to resentencing, the probation office prepared a second PSI Report.  The second PSI Report — like the first — listed the defendant's two prior arrests under his criminal history.  By this time, though, the Commonwealth of Puerto Rico had successfully appealed the dismissal of the six counts related to the 2017 arrest, secured their reinstatement, and convicted the defendant on two of the six counts.  On this basis, the second PSI Report added three points to the defendant's criminal history score, placing him in CHC II and elevating his guideline sentencing range on the two carjacking counts to seventy to eighty-seven months' imprisonment.  The defendant did not object to any aspect of the second PSI Report.

The district court convened a second disposition hearing on February 11, 2020.  Both the defendant and the government sought sentences at "the lower end of the guidelines" for the two carjacking counts and an eighty-four month sentence for the firearm count.

The district court did not oblige.  It observed that "[s]ome of the State charges, which were pending at the time of the original sentence, resulted in convictions of a violent offense.  Consequently, they can be relied upon for this

resentence."  The court thus adopted the guideline calculations limned in the second PSI Report.

When all was said and done, the court determined that the defendant "began to commit serious violent crimes when he was 16 years old.  He had been given the opportunity to benefit from a diversion program but continued with his criminal activities." An upwardly variant sentence, the court concluded, was "a sentence sufficient but not greater than necessary."  The court proceeded to impose concurrent sentences of 132 months' imprisonment on the two carjacking counts and a consecutive sentence of 108 months' imprisonment on the firearm count.  The defendant did not lodge any specific objection either to the court's use of intervening, post-sentencing convictions and sentences or to the elevated guideline sentencing range.

This timely appeal followed.

## II

In his opening brief in this court, the defendant raised two claims of error.  First, he argued that the resentencing court had repeated its earlier mistake by again considering arrests that had not resulted in convictions.  Second, he argued that the resentencing court had imposed a substantively unreasonable sentence.  He did not, however, challenge the resentencing court's use of intervening, post-sentencing convictions and sentences to boost his guideline sentencing range.

After the parties had filed their briefs, we ordered supplemental briefing:

> [A]ddressing . . . whether the district court erred in effectuating this court's mandate on remand by assessing criminal history points for and otherwise considering for sentencing purposes convictions and sentences that post-dated [the defendant's] initial sentencing. . . . whether any relevant claim of error is forfeited or waived and . . . whether this court can consider any such claim sua sponte.

The parties subsequently filed their supplemental briefs: the defendant belatedly sought consideration of the putative Ticchiarelli error, and the government contended that any such claim of error was waived.

**A**

We start by grappling with the question of whether we — as an appellate tribunal — may consider sua sponte a claim of error that was not raised by the defendant either in the court below or in his opening brief in this court. Because the claim of error involves a violation of the mandate rule, we answer this question in the affirmative.

Normally, a party waives a claim of error by failing to raise it in the court below. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). Similarly, a party may waive a claim of error by failing to raise it in his opening brief in this court. See Sandstrom v. ChemLawn Corp., 904

F.2d 83, 86 (1st Cir. 1990).  Even so, we have excused waiver "under exceptional circumstances . . . to forestall a miscarriage of justice."  Sindi v. El-Moslimany, 896 F.3d 1, 28 (1st Cir. 2018); see Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995).  When deciding whether to invoke this exception, our decision almost always turns on the equities of a given case.  See Sindi, 896 F.3d at 28 (listing factors that may be "given substantial weight" in such an analysis).

In this case, though, the circumstances are somewhat different.  The perceived error implicates the authority of this court's earlier mandate, and we — not a party — seek to raise it sua sponte.  The question is whether we may do so.

Although this is a question of first impression in this circuit, we have stated in dictum that "a court may raise law of the case issues sua sponte."  United States v. Matthews, 643 F.3d 9, 12 n.2 (1st Cir. 2011); see United States v. Wallace, 573 F.3d 82, 90 n.6 (1st Cir. 2009).  And other courts of appeals that have tackled this question have so held.  See United States v. Anderson, 772 F.3d 662, 669 (11th Cir. 2014) (holding that "the law-of-the-case doctrine may be raised by the court sua sponte" (emphasis in original)); Maxfield v. Cintas Corp., No. 2, 487 F.3d 1132, 1135 (8th Cir. 2007) (same); see also DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 76 (2d Cir. 1992) (raising law of the case issue sua sponte).

The law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). As we have repeatedly explained, the law of the case doctrine has two branches. See, e.g., Wallace, 573 F.3d at 88; United States v. Genao-Sánchez, 525 F.3d 67, 69 (1st Cir. 2008); United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004). The branch implicated here is the mandate rule,[4] which "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." Moran, 393 F.3d at 7. Put bluntly, "the mandate rule requires that the trial court conform with the directions of the appellate court on remand." United States v. Dávila-Félix, 763 F.3d 105, 109 (1st Cir. 2014). Because the mandate rule is embedded within the law of the case doctrine, it follows that we may raise an abridgement of the mandate rule sua sponte.

**1**

The government argues that the resentencing court did not transgress this court's mandate. That mandate, the government

_____

[4] For completeness, we add that the other branch of the doctrine "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." Moran, 393 F.3d at 7. That branch is not in issue here.

suggests, was broad and did not cabin the resentencing court's discretion. In the government's view, we merely remanded the case "for resentencing" — and the resentencing court was free to consider new developments (including intervening, post-sentencing convictions and sentences).

The government's narrow focus on the words "for resentencing" is myopic. Everything depends on context, and the case law makes pellucid that we ordinarily do not permit de novo resentencing on remand. See United States v. Cruzado-Laureano, 527 F.3d 231, 234 (1st Cir. 2008). In the face of this custom and practice, "the absence of an express limitation does not a limitless remand make." Dávila-Félix, 763 F.3d at 109.

To determine the scope of a remand, a district court must "consider carefully 'both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" Id. (quoting Genao-Sánchez, 525 F.3d at 70). It follows that the Cheveres I judgment and the circumstances attendant to that judgment necessarily inform the scope of the remand order.

In the run-up to the Cheveres I judgment, the government moved to remand because — it conceded — the sentencing court had violated the rule of Marrero-Pérez, 914 F.3d at 24, by impermissibly relying on prior arrests (not yet ripened into convictions) when determining the defendant's sentence. The

government also conceded that the sentencing court erred by "consider[ing] alleged pending state charges which were never included in the [PSI Report] . . . or any motions." The Cheveres I judgment described the two conceded sentencing errors and remanded the case "for resentencing."

The remand that we ordered in Cheveres I was designed to clear the decks by throwing overboard the arrests on which the sentencing court had erroneously relied. The phrase "for resentencing" was not a magic bullet that scuttled this context and — by some mysterious alchemy — converted our remand into a general remand, such as would "allow[] the district court to review all sentencing matters de novo." Wallace, 573 F.3d at 88 n.5. Both the letter and the spirit of our mandate, taken in context, made manifest that we were issuing a limited remand: the resentencing court was to correct the Marrero-Pérez error and to disregard the unproven allegations about pending charges in the Puerto Rico courts.

The record before us makes plain that the district court did not conform its resentencing to the limitations of the remand. Instead, the court doubled down on its error by using a prior arrest (which by then had ripened into two convictions and sentences) to jack up the defendant's criminal history score and inflate his guideline sentencing range. This freewheeling approach worked a violation of the mandate rule.

The government has a fallback position.  It argues that even if the remand order was limited, the district court did not offend the mandate rule because the court was permitted to consider the intervening, post-sentencing convictions and sentences as relevant "'information concerning the background, character, and conduct' of [the] defendant" and as "a critical part of [his] 'history and characteristics'" under 18 U.S.C. § 3553(a). (Quoting Pepper v. United States, 562 U.S. 476, 490, 492 (2011)).

This argument misses the mark.  In the case at hand, we are concerned with the district court's use of the intervening, post-sentencing convictions and sentences to increase the defendant's guideline sentencing range.  That the resentencing court may have been able to consider the same information for an entirely distinct purpose — a matter on which we take no view — makes no difference.

The government's final objection to sua sponte consideration of a claim of error not timely raised by the defendant centers on the party presentation principle, which teaches that, in our adversary system, courts "rely on the parties to frame the issues for decision" while the courts assume "the role of neutral arbiter of matters the parties present." Greenlaw v. United States, 554 U.S. 237, 243 (2008).  We agree that, "as a

general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) (alteration in original) (quoting Castro v. United States, 540 U.S. 375, 386 (2003)).

But this general rule — like most general rules — admits of exceptions.  Thus, "[t]he party presentation principle is supple, not ironclad.  There are no doubt circumstances in which a modest initiating role for a court is appropriate."  Id. Exercising this authority, the Supreme Court has "noticed, and ordered correction of, plain errors not raised by defendants . . . to benefit a defendant who had himself petitioned [it] for review on other grounds."  Greenlaw, 554 U.S. at 247 (citing Silber v. United States, 370 U.S. 717 (1962) (per curiam)).

Here, the equities strongly preponderate in favor of review.  We have an institutional interest in protecting the integrity of our mandate.  See Zipfel v. Halliburton Co., 861 F.2d 565, 567 (9th Cir. 1988) (explaining that court has the "power to protect the integrity of its own processes"); see also Sargent v. Columbia Forest Prods., Inc., 75 F.3d 86, 89 (2d Cir. 1996) (quoting Zipfel).  What is more, the government's remand motion would have led any reasonable defendant to anticipate a reduced sentence.  Instead, the remand — as implemented by the resentencing

court — proved to be a killing ground, not only dashing the defendant's hopes for a reduced sentence but also saddling him with a substantially greater term of immurement. In the circumstances of this case, a departure from the party presentation principle is warranted both in the interest of protecting the integrity of this court's mandate and in the interest of avoiding a miscarriage of justice.

**B**

The fact that we can review a claim of error sua sponte means that the claim of error is cognizable; it does not mean that the claim of error carries the day. The ultimate fate of the claim of error hinges on whether the error is reversible. As we have said, the claim of error was not raised below. This inquiry must proceed under a plain error standard of review. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (applying plain error review to claim of error not advanced below).

"The plain error standard, though rigorous, is not insurmountable." United States v. Ortiz, 741 F.3d 288, 293 (1st Cir. 2014). To prevail under plain error review, an appellant must make "four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. We test the defendant's

claim of sentencing error in the crucible of this four-part standard.

To begin, the district court erred by relying on intervening, post-sentencing convictions and sentences to enhance the defendant's criminal history score and thereby boost his guideline sentencing range. After all, "[a] defendant's guideline sentencing range is a product of two integers: his total offense level and his CHC." United States v. Pinkham, 896 F.3d 133, 139 (1st Cir. 2018). The latter integer — the defendant's CHC — "is derived from [his] criminal history score." Id.

When computing a defendant's criminal history score, a sentencing court must assess criminal history points for each sentence that qualifies as a "prior sentence." See USSG §4A1.1. In Ticchiarelli, we held that the phrase "prior sentence" in the guideline means "a sentence which is prior to the original sentence which was vacated and remanded only for resentencing." 171 F.3d at 35; see USSG §4A1.2(a)(1). It follows inexorably, as night follows day, that the court below transgressed Ticchiarelli by counting the intervening, post-sentencing sentences as prior sentences and, thus, adding three unwarranted points to the defendant's criminal history score. The erroneously inflated criminal history score raised the defendant's CHC from I to II and yielded a correspondingly higher guideline sentencing range. Cf. Pinkham, 896 F.3d at 139 (observing that "[t]he lower a defendant's

CHC, the lower his guideline sentencing range ordinarily will be"). Because this error was "contrary to existing law," United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021), we deem it clear and obvious.[5]

Moving to the third element of the plain error construct, it is transparently clear that this error affected the defendant's substantial rights. To satisfy this element, the defendant must show that the error was "'prejudicial' such that it 'affected the outcome of the district court proceedings.'" United States v. Bramley, 847 F.3d 1, 7 (1st Cir. 2017) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). Here, the error produced a significantly higher guideline sentencing range. And because the guidelines are "the starting point and the initial benchmark" in a sentencing proceeding, Gall v. United States, 552 U.S. 38, 49 (2007), a sentencing court that improperly assigns too lofty a guideline sentencing range infringes upon the defendant's substantial rights, see Molina-Martinez v. United States, 578 U.S.

---

[5] The government characterizes this court's holding in Ticchiarelli as an "outlier." This characterization lacks force. Ticchiarelli is the law of this circuit, and "[i]t is common ground that '[i]n a multi-panel circuit, newly constituted panels are . . . bound by prior panel decisions closely on point.'" United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018) (second alteration in original) (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)); see United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005) (noting "narrow exceptions," not relevant to this case). So it is here.

189, 204 (2016) (explaining that "a defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range").

Last — but far from least — we think that this error seriously impaired the fairness and integrity of a judicial proceeding. In Cheveres I, the government beseeched us to vacate the defendant's sentence, conceding that the sentencing court had impermissibly relied on certain aggravating factors in fashioning the sentence. The defendant did not object to the motion to remand, reasonably anticipating that removing the erroneously inserted aggravating factors from the sentencing calculus would result in a more lenient sentence. But after we vacated the sentence and ordered a remand, the resentencing court doubled down on an augmented version of those aggravating factors, assigned the defendant an elevated guideline sentencing range, and imposed an even stiffer sentence.

Sandbagging is not in fashion in this circuit. Given that the government and the resentencing court converted what was meant to be a path toward a reduced sentence into a costly trap for an unwary defendant, letting that outcome stand would put the judicial system in a poor light.

That ends this aspect of our inquiry. "In broad strokes, the public legitimacy of our justice system relies on procedures

that are neutral, accurate, consistent, trustworthy, and fair, and that provide opportunities for error correction." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1908 (2018) (internal quotations omitted). As the Supreme Court asked, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" Id. (quoting United States v. Sabillon-Umana, 772 F.3d 1328, 1333-34 (10th Cir. 2014) (Gorsuch, J.)). Such a "diminished view of the proceedings ordinarily will" suffice to satisfy the fourth element of the plain error construct. Id. That is true in this case.

## III

We need go no further. For the reasons elucidated above, we hold that we may raise sua sponte an error that constitutes a violation of the mandate rule. Because we conclude that the resentencing court committed plain Ticchiarelli error, we vacate the defendant's sentence and remand for resentencing consistent with this opinion.

**Vacated and Remanded**.