# United States Court of Appeals
## For the First Circuit

Nos. 24-1841, 24-1842

UNITED STATES,

Appellee,

v.

REYNALDO ROSA-BORGES,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Jessica E. Earl, with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appellate Division, and Kevin E. Lerman, Assistant Federal Public Defender, were on brief, for appellant.
Ricardo A. Imbert-Fernández, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

May 1, 2026

**RIKELMAN, <u>Circuit Judge</u>**.  These two sentencing appeals are back at our Court for a second time.  <u>See</u> <u>United States</u> v. <u>Rosa-Borges</u> (<u>Rosa I</u>), 101 F.4th 66 (1st Cir. 2024).  Once again, Reynaldo Rosa-Borges challenges both of his sentences on multiple grounds.  In this chapter, we affirm Rosa's[1] revocation sentence for violating the terms of his supervised release because he has waived his challenges to that sentence.  We conclude, however, that the district court relied on a legally invalid rationale in sentencing Rosa for his new conviction under 18 U.S.C. § 922(g)(1) and thus vacate and remand for resentencing in that case.

## I. BACKGROUND

We recap the key facts, drawing "from the uncontested parts of the probation officer's presentence investigation report (PSR), the plea agreement, and the transcripts of the sentencing and revocation hearings."  <u>Rosa I</u>, 101 F.4th at 68-69 (citation modified).

In February 2015, Rosa pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  The district court ultimately sentenced him to five years in prison followed by five years of supervised release.

___

[1] We refer to the appellant as "Rosa," consistent with his brief and Spanish naming customs.

After completing his prison sentence in May 2019, Rosa began serving his supervised release term. In November 2019, the probation officer notified the district court that Rosa had violated the terms of his supervised release by possessing controlled substances and altering a urine sample. The court "granted an action plan" and allowed his supervision to continue. In October 2020, the probation officer notified the court that Rosa had admitted to unlawful use of controlled substances, and the court modified the conditions of supervision "to include mental health treatment, to mitigate the risk behavior, and afford needed social services."

On March 29, 2021, while Rosa was still on supervised release for his 2015 conviction, he ran into trouble again. Police officers patrolling a beach saw him and another individual sitting in the back of an SUV, under its open trunk door, with a firearm in reach inside the trunk. The officers detained both men and seized from the SUV a loaded 7.62 caliber Norinco "AK-type pistol" and other items, including an ammunition magazine containing 30 rounds of 7.62 caliber ammunition. The next day, March 30, officers conducted a search at the house where Rosa lived with his aunt. The search yielded two rifle magazines loaded with 59 rounds of 7.62 caliber ammunition, collectively, and 41 loose rounds of identical ammunition (100 rounds total). During the search, Rosa's brother claimed that any items seized in the house belonged to

- 3 -

Rosa. In short order, Rosa's probation officer notified the district court that Rosa had violated the terms of his supervised release by possessing the gun and ammunition on March 29 and 30.

Based on these events in late March 2021, a grand jury eventually indicted Rosa for possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Rosa pleaded guilty to this new criminal conduct pursuant to a plea agreement and stipulated that he "knowingly possess[ed] . . . a 7.62 caliber Norinco rifle-style pistol . . . loaded with a bullet in the chamber and an ammunition magazine containing 30 rounds of 7.62 caliber ammunition."

Before the original sentencing hearings in 2021 for Rosa's new § 922(g)(1) conviction and the supervised release violations, the probation officer submitted a PSR. Paragraph 13 of the PSR described the March 30 search that yielded the 100 rounds of ammunition and explained that a family member reported that the ammunition belonged to Rosa. The district court relied on that information at both of Rosa's sentencing hearings, including to impose an upwardly variant sentence on the § 922(g)(1) charge.

Rosa appealed both sentences. See Rosa I, 101 F.4th at 73. We held that the statement by Rosa's brother attributing ownership of the 100 rounds of ammunition to Rosa was "unreliable hearsay" and that the district court erred in relying upon it.

- 4 -

Id. at 80.  Thus, we vacated Rosa's sentences and remanded for further proceedings consistent with our opinion.  See id.

Back at the district court, Rosa's resentencing hearings took place in August 2024.  At the § 922(g)(1) resentencing hearing, Rosa "request[ed] that the PSR be amended in order to delete paragraph 13 in accordance with" our decision because that paragraph included the statement by Rosa's brother that we had held was unreliable.  The court denied that request.

The district court then proceeded to impose its sentence for the § 922(g)(1) violation.  It agreed with the government's calculated United States Sentencing Guidelines range of 33 to 41 months.  It then explained that it found an above-guidelines sentence necessary to "reflect[] the seriousness of Mr. Rosa's offense, promote[] respect for the law, protect[] the public from additional crimes by Mr. Rosa, and address[] the issues of deterrence and punishment."  The court provided three justifications for its upward variance: (1) "Puerto Rico's high firearms and violent crime rate," (2) the "high amount of ammunition" and "the type of ammunition" possessed by Rosa, and (3) that "this is Mr. Rosa's second firearms offense."  As to the second justification, the court noted that Rosa possessed "the type of ammunition used by NATO countries for firearms of war." It then sentenced Rosa to 60 months in prison.  Rosa promptly objected to the sentence as procedurally and substantively

unreasonable; in objecting, he emphasized that 31 rounds was not "a high amount of ammunition" and that "the reference to firearms of war [was] unsubstantiated on the record."

Later that same morning, the district court held the resentencing hearing for Rosa's supervised release violations. The court determined that Rosa had committed a Grade A violation of his supervised release terms by possessing the "AK-type pistol." It reached this conclusion because Rosa's "conduct [of possessing the AK-type pistol] constitute[d] a new criminal offense that [was] punishable by a term of imprisonment exceeding 20 years" under the Puerto Rico Weapons Act of 2020. As a result, the court calculated the Sentencing Guidelines range to be 24 to 30 months in prison. It then decided that "a sentence at the low end of the guideline range [was] a sentence sufficient but not greater than necessary in this case" to "afford adequate deterrence to criminal conduct and to protect the community from Mr. Rosa's illegal behavior." In the end, the court sentenced Rosa to 24 months in prison for violating the terms of his supervised release, to be served consecutively to his § 922(g)(1) sentence. Rosa immediately objected to the sentence as procedurally and substantively unreasonable and singled out the court's Grade A determination, but the court overruled his objections.

Rosa again appealed both sentences.

## II. STANDARD OF REVIEW

In analyzing Rosa's sentencing challenges, we evaluate preserved claims under "a multifaceted abuse-of-discretion standard." United States v. Aponte-Colón, 104 F.4th 402, 414 (1st Cir. 2024) (quoting United States v. Sierra-Jiménez, 93 F.4th 565, 569 (1st Cir. 2024)). Under that umbrella standard, "we review the sentencing court's findings of fact for clear error and questions of law . . . de novo." Id. at 415 (quoting United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022)). By contrast, we review any unpreserved claims under the plain error standard. See United States v. Morales-Ortiz, 152 F.4th 31, 44 (1st Cir. 2025). To prevail under the demanding plain error test, Rosa must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Cheveres-Morales, 83 F.4th 34, 42-43 (1st Cir. 2023) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Under our "well established" "two-step framework," we first evaluate whether each sentence is procedurally reasonable and then analyze Rosa's substantive challenges, if needed. United States v. Colón-Cordero, 91 F.4th 41, 48 (1st Cir. 2024).

## III. DISCUSSION

Rosa challenges both his § 922(g)(1) sentence and his revocation sentence. As we will explain, we vacate Rosa's § 922(g)(1) sentence because the district court partially relied on a legally invalid rationale to justify its upward variance. We affirm Rosa's revocation sentence, however, because he has waived his arguments challenging that sentence.

### A. Section 922(g)(1) Resentencing

Rosa raises two primary procedural challenges to the district court's decision to impose an upward variance and sentence him to 60 months in prison on his § 922(g)(1) charge. He claims that the district court (1) violated our mandate in Rosa I and (2) failed to justify or individualize the upward variance it imposed. He also contends that the sentence is substantively unreasonable and that the government breached the plea agreement.

### 1. Mandate Rule

In Rosa I, we held that Rosa's brother's statement, set out in paragraph 13 of the PSR, was "unreliable hearsay" and, thus, the district court could not rely on it during sentencing. 101 F.4th at 80. Rosa claims that the district court ignored our mandate from Rosa I by maintaining paragraph 13 in the PSR and relying on that information again at his resentencing. We disagree.

Under the so-called "mandate rule," a district court must follow the decision of an appeals court and "conform with [its] direction[] . . . on remand." Cheveres-Morales, 83 F.4th at 40 (quoting United States v. Dávila-Félix, 763 F.3d 105, 109 (1st Cir. 2014)).[2]  In doing so, a district court "must implement both the letter and the spirit of the mandate, taking into account [our] opinion and the circumstances it embrace[d]."  United States v. Genao-Sánchez, 525 F.3d 67, 70 (1st Cir. 2008) (quoting United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993)).

At his resentencing, Rosa requested "that the PSR be amended in order to delete paragraph 13 in accordance with the opinion and order issued [in Rosa I]."  The government responded that it understood Rosa I to prohibit the district court from "rely[ing] solely upon that in imposing an upward variance." (Emphasis added.)  The court acknowledged that it "underst[ood]" the meaning of Rosa I, but that its inquiry was whether it should "eliminate that paragraph."  Rosa again urged the court to strike paragraph 13, but the court denied his request.

Because Rosa preserved his objection to including paragraph 13 in the PSR, we review de novo the district court's

_____

[2] The mandate rule is one "branch" of the "law of the case doctrine."  United States v. Genao-Sánchez, 525 F.3d 67, 69-70 (1st Cir. 2008).  The other "branch, not implicated here, deals with when a legal determination made by a court in a civil or criminal case establishes the law of that case throughout the balance of litigation in that court."  Id.

ruling on this issue.  See Genao-Sánchez, 525 F.3d at 69 (explaining that the "interpretation of [a] mandate . . . . is a quintessentially legal question"); see also United States v. Matthews, 643 F.3d 9, 13 (1st Cir. 2011) ("Whether the [law of the case] doctrine applies in a specific instance is a question of law, engendering de novo review.").  In doing so, we must "parse the operative language of our prior opinion to discern the contours of its mandate."  Genao-Sánchez, 525 F.3d at 70.

Nothing in our prior opinion required the district court to amend the PSR on remand.  See Rosa I, 101 F.4th 66.  We noted in our decision that "the district court denied Rosa's request to remove paragraph 13 from the PSR."  Id. at 76.  But we did not require the court to strike paragraph 13 at resentencing.  Our decision focused on how the court used the information in the PSR, not the PSR itself; and, of course, it is well-established that "a district court is not required to agree with the PSR."  United States v. Acevedo-Osorio, 118 F.4th 117, 140 (1st Cir. 2024).  Thus, neither the "letter" nor the "spirit" of our opinion, see Genao-Sánchez, 525 F.3d at 70 (quoting Connell, 6 F.3d at 30), required the court to strike paragraph 13 from the PSR on remand, so long as it did not rely on paragraph 13 to impose an upwardly variant sentence.

We now consider the heart of Rosa's mandate argument: He contends that the district court again relied on his brother's

statement when it resentenced him, despite our opinion in Rosa I. Because Rosa did not raise this claim at the resentencing hearing itself, we must review it for plain error only. See Cheveres-Morales, 83 F.4th at 42. But the government contends that Rosa waived this claim entirely by failing to brief the plain error standard on appeal. Even if we were to ignore this briefing oversight, Rosa's challenge fails under the demanding plain error standard. See United States v. Burgos-Balbuena, 113 F.4th 112, 121 n.6 (1st Cir. 2024) (bypassing waiver because the claim failed under plain error review).

For Rosa to satisfy the first prong of the plain error test, he must demonstrate that an error occurred. See Cheveres-Morales, 83 F.4th at 43. Thus, he must show that, at resentencing, the district court again relied on the "unreliable hearsay" in paragraph 13. But the record contradicts Rosa on this point. In pronouncing its sentence on remand, the court stated that it had "considered . . . [our] opinion" and noted that Rosa "possessed 31 rounds of ammunition." To underline this point, the court expressly clarified that it was "only taking into consideration the 31 rounds that [Rosa] had, not the 100 rounds that the Court of Appeals indicated . . . [were] not reliable." The court's statements about what it considered in imposing a sentence are "entitled to significant weight." United States v. López-Felicie, 109 F.4th 51, 59 (1st Cir. 2024) (quoting United

States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014)) (giving "significant weight" to the district court's statement that it "considered the relevant factors under 18 U.S.C. § 3553(a)").

Rosa nevertheless argues that the district court's statements that it did not rely on his brother's hearsay cannot be "square[d] . . . with the record as a whole." See United States v. Rivera-Ruiz, 43 F.4th 172, 183-84 (1st Cir. 2022) (finding the district court impermissibly relied on certain information because its treatment of the information "exceeded" a mere "passing reference" (citation modified)). But he offers only one data point to support this argument: the court's reference on remand to "a high-quantity of ammunition." According to Rosa, this comment must have meant that the court was considering the other 100 rounds of ammunition. The court's statement in full, however, was: "[Rosa] possessed 31 rounds of ammunition, and the Court of Appeals has indicated that the possession of a high amount of ammunition may be considered by the [c]ourt to impose [a] sentence."[3] This statement, in the context of the entire resentencing hearing, is

---

[3] Rosa raises a separate challenge to this statement, arguing that 31 rounds of ammunition is not a "high amount of ammunition" under our precedent. We take up this argument below. See infra Section III.A.2.

- 12 -

not enough to make us "doubt [the district court's] word" that it was following our mandate.  Santiago-Rivera, 744 F.3d at 233.

Thus, Rosa's procedural challenge on this ground fails.

## 2. Sentencing Rationale

The district court provided three rationales for its upwardly variant § 922(g)(1) sentence: (1) "Puerto Rico's high firearms and violent crime rate"; (2) Rosa's "possession of a high amount of ammunition" along with "the type of ammunition"; and (3) that "this is . . . Rosa's second firearms offense."  Rosa argues that the court did not adequately explain how the first two considerations applied to him and that the third factor alone cannot justify the upward variance.

Before diving into the merits of Rosa's arguments, we identify some "guiding principles."  Aponte-Colón, 104 F.4th at 416.  "[A]t the time of sentencing," the district court must "state in open court the reasons for its imposition of the particular sentence."  18 U.S.C. § 3553(c).  This explanation "must demonstrate that [the court] conducted an individualized assessment of the [sentencing] factors based on the facts presented" in that case.  Aponte-Colón, 104 F.4th at 416 (citation modified).  A sentencing court "has the authority to vary upward from a properly calculated guideline sentencing range . . . if some special characteristic attributable either to the offender or to the offense of conviction serves to remove [the] case from the

mine-run." United States v. Rivera-Berríos, 968 F.3d 130, 137 (1st Cir. 2020). If the district court so varies, it must explain why the case is not in the "mine-run," meaning it must "justify" its decision by "explain[ing] why it deems the defendant's case different from the norm." Aponte-Colón, 104 F.4th at 416.

We start and end our analysis with the district court's second rationale for its upward variance, which we find legally invalid and dispositively so. The court justified its upward variance, in part, because Rosa possessed 31 rounds of ammunition, which it described as "a high amount." Rosa challenges this analysis as "procedurally unreasonable because 31 rounds is not out of the ordinary" under our caselaw.

"Our precedent is clear that sentencing courts may consider the amount of ammunition to be an aggravating factor, one not already accounted for by the guidelines, if the amount exceeds what is consistent with simple possession." United States v. Morales-Vélez, 100 F.4th 334, 344 (1st Cir. 2024) (citing United States v. Rivera-Santiago, 919 F.3d 82, 85-86 (1st Cir. 2019)) (affirming district court's decision to vary upward based on a large amount of ammunition). Our precedent is also clear, however, that 31 rounds of ammunition is "entirely consistent with simple

possession of a machine gun,"[4] meaning that this amount of ammunition alone cannot justify an upward variance. Rivera-Berríos, 968 F.3d at 133, 135 (holding that 36 rounds was not a "large cache of ammunition"). Indeed, the government concedes that the amount of ammunition here is not enough on its own to take this case outside the mine-run under the holding of Rivera-Berríos. Thus, there is no dispute that the district court's conclusion on this issue was inconsistent with our caselaw.

To the extent that the district court determined that 31 rounds of ammunition was a "high amount" because it was "the type of ammunition used by NATO countries for firearms of war," we still conclude that a procedural error occurred. There was no evidence in the record before the district court to support its finding about "the type of ammunition." Thus, that finding was clearly erroneous. See United States v. Cotto-Negrón, 845 F.3d 434, 438-39 (1st Cir. 2017) (holding that district court's factual finding at sentencing constituted "clear error" because there was "no basis in the record for the court's conclusion"); see also Morales-Vélez, 100 F.4th at 345 (agreeing that an upwardly variant sentence "could not be based on the type of bullets [the defendant] possessed, as

---

[4] We note that Rosa did not possess a machine gun but rather a "semi-automatic firearm that [was] capable of accepting a large-capacity magazine." The government has not argued that this distinction should make a difference in how we evaluate the amount of ammunition at issue here.

there [was] no evidence in the record that [the] bullets [were] 'more lethal, dangerous, or inhumane than other ordinary commercially available bullets'").

We must still consider, however, if the error was harmless "on the record as a whole," meaning "that the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203 (1992) (citing Fed. R. Crim. P. 52(a)); see also United States v. Tavares, 705 F.3d 4, 25 (1st Cir. 2013) ("We routinely apply Williams's harmless-error analysis to procedural errors at sentencing."). If we are not convinced that the error was harmless, we must vacate and remand. Williams, 503 U.S. at 203.

A procedural error like the one here is harmless only if we can conclude that the sentencing court "inevitably" would have imposed the same sentence "based solely on" the other rationales it cited. United States v. Diaz, 285 F.3d 92, 98 (1st Cir. 2002). The record does not give us any "assurance" that the district court "inevitably" would have selected the same sentence for Rosa if it had put the amount and type of ammunition involved to the side. See id. at 98-99. To the contrary, the court discussed the community conditions in Puerto Rico, the "high" amount and type of ammunition, and that this conviction was Rosa's second firearm offense and imposed its sentence "[b]ased on all those facts."

(Emphasis added.) Thus, we hold that the error was not harmless, requiring us to vacate Rosa's § 922(g)(1) sentence.[5]

In remanding for resentencing on Rosa's § 922(g)(1) conviction, we may order any further proceedings that are "just under the circumstances." 28 U.S.C. § 2106. We conclude that remanding to a different judge would be just because the district court relied on "non-record" facts about the type of ammunition to impose an upward variance, "without identifying the source [of those facts] or providing notice" to Rosa that it would consider such facts "in determining his sentence." United States v. Ramos-Carreras, 59 F.4th 1, 7-8 (1st Cir. 2023) (vacating a criminal sentence and remanding to a different judge for resentencing because the district court justified its upward variance with "extra-record allegations"); see also United States v. Craven, 239 F.3d 91, 103 (1st Cir. 2001) (remanding to a different judge because the sentencing judge relied on "ex parte communications . . . not . . . tested through the adversary process . . . [with] no trace in the record" (citation modified)); Colón-Cordero, 91 F.4th at 58 (citing cases).

---

[5] The district court's reliance on a legally invalid rationale justifies vacating Rosa's § 922(g)(1) sentence. Thus, we end our analysis there and do not consider the other arguments lodged by Rosa against that sentence. See Colón-Cordero, 91 F.4th at 58 (vacating and remanding based on a procedural error and therefore "leav[ing] untouched and intimat[ing] no view on [the defendant's] other appellate challenges to his sentences").

### 3. Breach of Plea Agreement Claim

Rosa also argues that the government breached the plea agreement when it "misrepresent[ed] [Rosa I's] mandate and insist[ed] on retaining discredited information" in the PSR during his § 922(g)(1) resentencing. Consistent with our precedent, he requests that we remand to a different judge if we agree that the government breached the plea agreement; he does not ask to withdraw his plea. See United States v. Kurkculer, 918 F.2d 295, 300 (1st Cir. 1990). Because the only remedy Rosa seeks for his plea breach claim is resentencing before a different judge on his § 922(g)(1) conviction, and we already granted that remedy in light of the procedural errors that occurred, we need not decide this claim. Cf. Rosa I, 101 F.4th at 74 (citing United States v. Clark, 55 F.3d 9, 14 (1st Cir. 1995)) (addressing "Rosa's plea-breach claim to determine whether [he] [was] entitled to resentencing by a different judge").

We do emphasize, however, that we disagree with the government's interpretation of Rosa I. In that decision, we made it abundantly clear that the statement by Rosa's brother was unreliable and could not be used to support an upward variance. See id. at 79. Unreliable information cannot be used at sentencing, full stop. Thus, the government was wrong to argue to the district court that it could not "rely solely" on that information in resentencing Rosa. (Emphasis added.)

- 18 -

## B. Revocation Resentencing

We turn next to Rosa's challenge to his revocation sentence. "To guide the [revocation] sentencing decision, the United States Sentencing Guidelines set three grades of supervised release violations." United States v. Colón-Maldonado, 953 F.3d 1, 3 (1st Cir. 2020). A Grade A violation -- the highest grade -- includes "conduct constituting . . . [a] federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." U.S Sent'g Guidelines Manual § 7B1.1(a)(1)(B) (U.S. Sent'g Comm'n 2023).[6]

At the revocation sentencing, the district court determined that Rosa committed a Grade A violation because he "engaged in conduct that violate[d] Article 2.16 of the Puerto Rico Weapons Law of 2020" and that "[a]ny person who violates Article 2.16 shall be punishable by imprisonment for a fixed term of 24 years." See P.R. Laws Ann. tit. 25, § 462o (prohibiting the unlicensed possession of semiautomatic assault weapons). Rosa immediately objected to the sentence "as both procedurally and substantively unreasonable."

Rosa vociferously contested the district court's Grade A determination, claiming that the "Puerto Rico statute . . . is unconstitutionally vague" and "in violation of his Second

---

[6] We apply the Sentencing Guidelines that were in place at the time of Rosa's resentencing.

Amendment rights." He also argued that "the sentence imposed [was] excessive" because the parties' plea negotiations "proceeded under the . . . understanding" that his supervised release violation would be scored as Grade B.[7] But, at the same time, Rosa readily admitted that he was aware that any such negotiations by the parties were "not binding" on the court. The court overruled his objections.

In his opening brief on appeal, Rosa challenges his revocation sentence as procedurally unreasonable. He argues that (1) he did not receive the requisite "written notice of the alleged [Grade A] violation" pursuant to Federal Rule of Criminal Procedure 32.1(b)(2)(A); (2) the government did not prove by reliable evidence that he engaged in conduct violating Article 2.16; and (3) the parties negotiated a Grade B violation, which induced Rosa to plea. He makes all these arguments in fewer than three pages of his brief.

In response, the government contends that Rosa did not preserve these claims, and thus, at best, they must be subject to plain error review. See United States v. Alejandro-Rosado, 878 F.3d 435, 438-39 (1st Cir. 2017). It also insists that because Rosa failed to address the plain error standard in his opening

---

[7] A Grade B violation includes "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S Sent'g Guidelines Manual § 7B1.1(a)(2) (U.S. Sent'g Comm'n 2023).

brief, he has waived these claims altogether. See United States v. Cordero-Velázquez, 124 F.4th 44, 52 (1st Cir. 2024) (holding that a defendant's failure to "attempt to satisfy [the plain error] standard of review in his opening brief" was "fatal" (citation modified)). For his part, Rosa ignores the government's arguments as to his revocation sentence; indeed, his reply brief conspicuously does not mention his revocation sentence at all. On this record, we agree with the government that Rosa has waived his challenges to his revocation sentence.

To preserve a challenge to a procedural error at sentencing, a defendant's objection must be "sufficiently specific to call the district court's attention to the asserted error," even though that objection "need not be framed with exquisite precision." United States v. Mercado-Cañizares, 133 F.4th 173, 180 (1st Cir. 2025) (quoting Rivera-Berríos, 968 F.3d at 134). Rosa does not clear that bar here.

Of Rosa's procedural arguments on appeal, only his third argument bears any relationship to the objections he lodged at the district court to his revocation sentence. And even then, the relationship is shaky. At the district court, Rosa contended only that the revocation sentence was "excessive" in light of the parties' negotiations. Then, without prompting, he also conceded that the parties' "understanding" about the grade of the violation could not bind the court. Rosa never suggested that he had an

agreement with the government on the revocation sentence that induced him to plea.

Because the specific procedural claims Rosa raises in his opening brief are unpreserved, he should have argued them under the plain error standard. His failure to do so, and his decision not to discuss the revocation sentence at all in his reply brief, leads us to hold that he has waived these claims. See United States v. Muñoz-Gonzalez, 145 F.4th 21, 25-26 (1st Cir. 2025); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

We also conclude that Rosa has waived any substantive reasonableness challenge to his revocation sentence. Although he briefly alludes to such a challenge, the only substantive reasonableness arguments included in his appellate briefs focus on his § 922(g)(1) sentence. See Zannino, 895 F.2d at 17 (finding waiver for failure to develop argument on appeal).

## IV. CONCLUSION

For all these reasons, we **vacate** Rosa's § 922(g)(1) sentence and **remand** to a different judge for resentencing on that charge consistent with this opinion. We **affirm** Rosa's revocation sentence.